**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HESTER MENDEZ and GILBERT MENDEZ, for themselves and on behalf of their minor children, P.M. and J.M., | ) ) ) ) | No. 18 CV 5560 |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| THE CITY OF CHICAGO, JOSEPH T. CAPELLO IV, SAMUEL DARI, MICHAEL W. DONNELLY, RUSSELL A. EGAN, MICHAEL J. GUZMAN, JOSE M. HERNANDEZ, and ERIC M. SEHNER, | ) ) ) ) ) ) ) | |
| | ) | November 21, 2019 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiffs are suing the City of Chicago and the named Chicago Police Officers in connection with their execution of a search warrant at Plaintiffs' home. Before the court is Defendants' motion for a protective order. Defendants seek an order prohibiting the public release of discovery materials, including deposition testimony, and to prevent Plaintiffs and their counsel from publicly discussing this lawsuit. For the following reasons, the motion is granted in part and denied in part:

**Background**

On November 7, 2017, Defendant Officers executed a search warrant at Plaintiffs' apartment. (R. 125, Pls.' 4th Am. Compl. ¶ 2; R. 134, Defs.' Mot. at 1.) Plaintiffs allege that during the execution of the warrant, Defendant Officers

"repeatedly pointed and held guns directly" at Plaintiffs J.M. and P.M., who were only five and nine years old at the time. (R. 125, Pls.' 4th Am. Compl. ¶ 2.) Plaintiffs further allege that Plaintiff Gilbert Mendez, the children's father, was handcuffed "in front of his sons, for approximately 90 minutes or throughout the duration of [Defendant Officers'] search." (Id. ¶ 3.) Defendant Officers also screamed and used profanity during the search, according to Plaintiffs. (Id. ¶ 4.) Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and *Monnell v. Department of Social Services*, 436 U.S. 658 (1978), alleging, among other things, unlawful *de facto* policies violating the right to be free of excessive force. (Id. ¶¶ 8, 113-223.)

Defendants in turn assert that Defendant Officers executed "a valid search warrant" intending "to seize a large amount of heroin and crack cocaine." (R. 134, Defs.' Mot. at 1.) According to Defendants, the informant who provided the location of "the large cache of narcotics" appeared before a judge and answered questions before the judge issued the subject warrant. (Id. at 2.) When Defendant Officers entered the apartment identified by the informant, "[t]he apartment smelled of burnt cannabis," according to them. (Id.) During the search, Defendants contend that "[n]o guns were pointed at children" and the boys were not touched. (Id.) They further defend that the entire incident lasted about 13 minutes. (Id.)

In their motion Defendants argue that Plaintiffs have publicized discovery information in an effort to try "their case in the media" before a trial takes place. (Id.) They allege that Plaintiffs and their attorney have participated in press conferences and interviews and have released Defendant Officers' body camera

video footage as well as the footage from their video depositions. (Id. at 2-3, 5.) Defendants contend that the media's coverage of the incident has been "one-sided" and unfairly prejudicial toward them. (Id. at 3.) Defendants therefore move for a protective order restricting public disclosure of discovery materials, including the depositions of the Defendant Officers, and prohibiting Plaintiffs and their counsel from publicly discussing this case until the matter is fully resolved. (Id. at 3-4.)

## Analysis

Defendants assert that good cause exists under Federal Rule of Civil Procedure 26(c) to enter the requested protective order. Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect the party from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking entry of the protective order must establish good cause, which requires a showing that "disclosure will cause a clearly defined and serious injury," *Caine v. City of Chi.*, No. 11 CV 8996, 2012 WL 13059125, at *1 (N.D. Ill. June 28, 2012). Good cause generally exists where there is "a sound basis or legitimate need to take judicial action." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). The court must consider the facts and circumstances of each case and balance the interests involved when deciding whether there is good cause to enter a protective order. *Caine*, 2012 WL 13059125, at *1; *see also Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). "[A] court has broad discretion in fashioning appropriate protective orders." *McGee v. City of Chi.*, No. 04 CV 6352, 2005 WL 3215558, at *2 (N.D. Ill. June 23, 2005).

**A.      Discovery Materials**

Defendants seek to prohibit the release of depositions, along with other discovery materials, to avoid unfairly "taint[ing] the jury pool, thus impairing Defendants' right to a fair trial." (R. 134, Defs.' Mot. at 4.)  Plaintiffs respond that no judicial interference is likely to occur where discovery is ongoing, and a trial date has not been set.  (R. 151, Pls.' Resp. at 1, 10-12.)  They contend that Defendants' request is tantamount to an effort to "gag" them by preventing them from discussing non-confidential information about a matter of grave public concern—police officers allegedly pointing guns at young children.  (Id. at 1, 3, 12-16.)

The public generally has a right of access to judicial proceedings and materials "that influence or underpin the judicial decision," provided they are not confidential.  *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-33 (1984)).  But "[s]ecrecy is fine at the discovery stage, before the material[s] enter[] the judicial record."  *Id.* This is because "the public interest in access to materials that form the basis of a judicial decision is greater than in other materials generated in the discovery process."  *Hobley*, 225 F.R.D. at 224.  Thus, a court may prohibit the release of discovery materials, such as depositions, before trial without running afoul of the First Amendment.  *Seattle Times*, 467 U.S. at 32-33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

Defendants first ask the court to preclude the disclosure of Defendant Officers' depositions in video and written format. "[D]issemination of . . . videotaped depositions for broadcasting [can be] particularly troubling" in certain matters. *Hobley*, 225 F.R.D. at 226; *see also Felling v. Knight*, No. 01 CV 0571, 2001 WL 1782360, at *2 (S.D. Ind. Dec. 21, 2001) (noting that "[v]ideotapes are subject to a higher degree of potential abuse" than written transcripts because they may be "cut and spliced"). Video snippets may make good "soundbite[s]," but they have the potential to expose the jury pool to "memorable image[s]" that may influence the resolution of the case. *Hobley*, 225 F.R.D. at 226. This problem is exacerbated by the fact that today's society is relying increasingly more on video and audio clips and headlines for news. Thus, where a party seeking a protective order has made the requisite showing of good cause to prohibit the release of videotaped depositions, courts generally have entered such orders. *See, e.g.*, *id.*; *Caine*, 2012 WL 13059125, at *2 (restricting release of video depositions and noting that "the sealing of videotape depositions has been approved" in a number of cases).

Not all courts share the same concerns about potential abuse with the release of written deposition transcripts. With video, once an inflammatory image is played, it is "out there forever[,] [a]nd it becomes really hard to put the cat back into the bag." *Chatman v. City of Chi.*, No. 13 CV 5697, Dkt. 173 at 17 (Nov. 19, 2015 Hearing Tr.). By contrast, written deposition transcripts, generally being bulky in nature, "are less susceptible to wide public distribution." *Caine*, 2012 WL 13059125, at *2 (citing *Felling*, 2001 WL 1782360, at *2); *but see Hobley*, 225 F.R.D.

at 226 (finding good cause for entry of protective order barring dissemination of deposition transcripts and videotapes because of the facts of the case).

In light of the relevant facts and circumstances of this case, the court finds good cause to prevent dissemination of Defendant Officers' depositions in video format only. Defendants have a right to a fair trial, and thus where the deponents are named Defendants, their interest in protecting their right to a fair trial by preventing "cut and spliced" video from tainting the jury pool outweighs the public interest in disclosing the footage. *See Caine*, 2012 WL 13059125, at *2. The court therefore restricts any further pretrial public release of Defendant Officers' video depositions.

Defendants also ask the court to extend the protective order to Defendant Officers' depositions in written format and to all "other unfiled discovery." (R. 134, Defs.' Mot. at 12.) The court denies this request because Defendants have not shown good cause to shield those materials from public disclosure. The confidentiality protective order entered in this case permits a party to designate as confidential any deposition testimony and documents that qualify for protection under the terms of that order. (R. 84, Order ¶¶ 1-3.) Defendants have not shown that the confidentiality protective order is insufficient to protect confidential materials exchanged during discovery, or that they will suffer a "clearly defined and serious injury" if non-confidential discovery materials (other than video depositions) are publicly disseminated.

## B. Public Comments

Defendants also seek an order precluding Plaintiffs and their attorney from "try[ing] their case in the media." (R. 134, Defs.' Mot. at 5.) Plaintiffs respond that the public's interest in accessing information about this lawsuit outweighs Defendants' privacy interests because the case involves a matter of grave public concern. (R. 151, Pls.' Resp. at 3-7; R. 151-1 Ex. A, Hofeld Decl. ¶¶ 3-4, 8.)

The ABA Model Rules of Professional Conduct provide ethical guidance to lawyers when making "extrajudicial" statements. Rule 3.6(a) states:

> [a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Local Rule 83.50 adopts the ABA Model Rules as the "[a]pplicable disciplinary rules" for this district. Under both rules, a lawyer may "state information that is in the public record." *Hobley*, No. 03 CV 3678, Dkt. 404 at 12 (Jan. 21, 2005 Mem. Op. & Order).

This court has the power to ensure a fair trial and to protect its "processes from prejudicial outside interferences." *See Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir. 1975) ("That courts have the duty to ensure fair trials—'the most fundamental of all freedoms'—is beyond question.") (citation omitted). Thus, where extrajudicial statements pose a "serious and imminent threat" of interfering with "the orderly and fair administration" of judicial processes, the court may take appropriate measures to ensure fairness. *Id.* at 249 (internal quotations and

citation omitted). However, where such statements suggest only "[s]ome remote possibility" that comments could interfere with fairness in a civil trial, a restriction on speech is not justified. *See id.* at 258-59.

Here Defendants have not shown that any extrajudicial statements made by Plaintiffs or their attorney present a "serious [or] imminent threat" of interfering with a fair trial or will otherwise prejudice Defendants. *Id.* at 249. To be sure, Defendants have offered nothing more than a mere "remote possibility" that they will suffer from juror partiality during trial as a result of news coverage related to this case. *Id.* As Plaintiffs note, Defendants did not submit any news articles or reports identifying or depicting allegedly prejudicial statements made by Plaintiffs or their attorney. (R. 151, Pls.' Resp. at 8-9.) Instead, Defendants generally refer to Plaintiffs' and their attorney's participation in news conferences and televised interviews. (R. 134, Defs.' Mot. at 2-3.) Vague allegations are insufficient to show that any extrajudicial statements pose a "serious [or] imminent threat" of judicial interference. *Chi. Council of Lawyers*, 522 F.2d at 249.

For his part Plaintiffs' attorney submits a summary of his clients' and his own discussions with the media about this case. (R. 151-1, Hofeld Decl. ¶¶ 4-7, 9, 11, 13, 15.) Based upon these attestations, the extrajudicial statements appear to relate to recitations of the facts alleged in Plaintiffs' complaint, "applicable Fourth Amendment law," and investigatory findings regarding alleged police practices relating to excessive force against young children. (Id. ¶ 4.) Defendants have not offered any evidence refuting these characterizations of Plaintiffs' and their

attorney's statements. Also, Defendants have not demonstrated that the Model Rules and Local Rule 83.50 are inadequate to ensure a fair trial here. Accordingly, the court denies Defendants' request to bar public comment by Plaintiffs and their attorney.

## Conclusion

For the foregoing reasons, Defendants' motion for entry of a protective order is granted in part and denied in part. The motion is granted only to the extent that Plaintiffs are barred from pretrial public release of Defendant Officers' video depositions. Before filing any portion of Defendant Officers' video depositions as part of the public record, Plaintiffs must seek leave of court to do so.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**