UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HESTER MENDEZ, *et al.*, | ) |
|                  Plaintiffs, | ) No. 18 CV 5560 |
| v. | ) Magistrate Judge Young B. Kim |
| THE CITY OF CHICAGO, *et al.*, | ) |
|                  Defendants. | ) March 19, 2020 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Hester and Gilbert Mendez, on behalf of themselves and their two minor children, have sued the City of Chicago and multiple police officers alleging that Defendants violated their constitutional rights when executing a search warrant at their home. In the course of discovery, Plaintiffs issued a deposition subpoena to non-party Cook County Circuit Court Judge Charles Burns, who signed the warrant authorizing the search of Plaintiffs' home. Before the court is Judge Burns's motion to quash the subpoena. For the following reasons, the motion is granted:

**Background**

On November 7, 2017, City of Chicago police officers entered Plaintiffs' second-floor apartment to execute a search warrant prepared by Officer Joseph Cappello and granted by Judge Burns. The warrant authorized the search of the residence of two individuals whose address was listed as "3557 S. Damen Avenue, 2nd floor, Chicago, Cook County, Illinois." (R. 125, Pls.' 4th Am. Compl. ¶ 28.) The

target individuals actually lived on the third floor, not the second. (Id. ¶ 29.) Because of this error, Defendant Officers entered Plaintiffs' home instead of the targets' residence one floor above. Plaintiffs allege that after entering their apartment Defendant Officers "repeatedly pointed and held guns directly" at Plaintiffs' minor children, screamed and shouted profanities, and handcuffed Gilbert Mendez. (Id. ¶¶ 2-3.) Plaintiffs bring this action under 42 U.S.C. § 1983 and *Monnell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging, among other things, illegal search, false arrest, and unlawful *de facto* policies violating the right to be free of excessive force. (Id. ¶¶ 8, 113-223.)

In December 2019 Plaintiffs issued their subpoena for Judge Burns's deposition testimony with respect to his involvement in authorizing the search warrant. In moving to quash the subpoena, Judge Burns argues that the subpoena would require the disclosure of privileged information regarding the mental processes he used to evaluate the search warrant application and would subject him to an undue burden. (R. 217, Mot. to Quash at 1.) Plaintiffs counter in response that they are not seeking to depose Judge Burns with respect to his deliberative process, but rather question him on what they characterize as purely factual questions like "his 'customary practices,' what he generally requires in an affiant officer's complaint for search warrant, and the questions that he generally asks affiant officers." (R. 226, Pls.' Resp. at 2-3.) Defendants do not oppose the motion to quash. (R. 227, Defs.' Resp. at 1.)

2

Analysis

Federal Rule of Civil Procedure 45(d)(3)(a) states that the court is required to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(a). The party seeking to quash a subpoena has the burden of proving at least one of the above requirements. *See Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012). Whether to quash a subpoena is within the court's discretion. *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008).

Judge Burns's primary argument is that the subpoena must be quashed because complying with the subpoena would require him to disclose privileged information. He correctly points out that his analysis of the search warrant application is protected by a privilege known as the mental process or judicial deliberative process privilege. *See Cain v. City of New Orleans*, No. 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016). Based on this privilege, a judge may decline a subpoena requiring him to answer questions about his court proceedings or the rationale for his findings.[1] *See Crenshaw v. Dywan*, 34 F. Supp. 2d 707, 710 (N.D. Ind. 1999) (citing *In Matter of Cook*, 49 F.3d 263, 265 (7th Cir. 1995)). In particular, the privilege generally protects judges from being forced to testify about their reasoning, motivations, or thought processes in performing judicial functions or in coming to a final judgement. *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202

---

[1] Although the validity of this privilege has been "universally recognized," a relatively small number of cases addresses the issue, likely because it is so well-entrenched in both federal and state law. *See Cain*, 2016 WL 7156071, at *3.

3

(E.D. Pa. 2009). This privilege exists to ensure that judgments are final, to maintain judgments' integrity and quality, and to encourage judges to be independent and impartial. *Cain*, 2016 WL 7156071 at *4. It also exists "to further the principle that courts speak through their records." *Prakel v. Ind.*, No. 4:12-cv-45-SEB-WGH, 2013 WL 3287691, at *3 (S.D. Ind. Jun. 28, 2013).

Plaintiffs argue that the mental process privilege is not a barrier to Judge Burns's testimony here because they intend to limit the questions to the underlying facts relevant to the search warrant and, they say, they have no plans to venture into Judge Burns's reasoning or thought processes. (R. 226, Pls.' Resp. at 5.) Specifically, Plaintiffs assert that they intend to pursue two lines of questioning. The first would target details on Judge Burns's interaction with Officer Cappello, including what was said and what Judge Burns asked about the independent corroboration of the address and the presence of children. The second line of proposed questions would seek general details on Judge Burns's and the City's "customary practices" with respect to confirming details about targeted addresses and the presence of children at those addresses. (Id. at 5-6.) According to Plaintiffs, these are purely factual lines of inquiry.

The court finds that both lines of Plaintiffs' proposed questions are highly likely to invade into Judge Burns's decision-making process and therefore target privileged material. *Ciarlone v. City of Reading*, 263 F.R.D. 198 (E.D. Pa. 2009), is a particularly instructive case. There the plaintiff sued a municipal code enforcement officer alleging that he violated the plaintiff's constitutional rights in

4

conducting a search of her property for the purpose of harassing her. *Id.* at 200. According to the plaintiff, the defendant officer's first attempt to secure a search warrant was denied after the assigned judge overheard the defendant make comments suggesting that his motivation for the warrant was based on personal vendetta. *Id.* at 199. The plaintiff issued a deposition subpoena to the judge, seeking his testimony on the defendant's comments. *Id.* at 200. The court granted the judge's motion to quash the subpoena after concluding that the targeted testimony about statements made during the search warrant application process were not discoverable. The court noted that "[t]he general rule is that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *Id.* at 202. Although the plaintiff tried to characterize the information she sought as being purely factual and geared only toward public comments that the judge happened to overhear, the court saw those questions as going directly to the mental processes that informed his performance of the judicial function of analyzing the search warrant application. *Id.* at 203.

Similar to the circumstances in *Ciarlone*, here the subpoena is clearly aimed at discovering information that goes to the heart of Judge Burns's judicial function. Judge Burns was acting in his judicial capacity at the time Officer Cappello told him about the specific details of his search warrant application. Judge Burns used the information Officer Cappello gave him when he decided to approve the search warrant application. Judge Burns's testimony with respect to the proposed line of

5

questioning therefore would cover his thought processes in his capacity as a judge, and the privilege applies.

To the extent Plaintiffs want to question Judge Burns about his own and the City's "customary practices" with respect to information exchanged in the context of search warrant procedures, those questions also would probe into comparable details of Judge Burns's deliberative processes. The questions Judge Burns customarily asks officers and the other information he considers in weighing search warrant applications go to the heart of his deliberative process. *See Gerogou v. Fritzshall*, No. 93 CV 997, 1995 WL 248002, at *6 (N.D. Ill. April 26, 1995). Plaintiffs' attempt to characterize these topics as purely factual ignores the reality that the targeted facts obviously inform Judge Burns's deliberations. Otherwise they would hold no interest to Plaintiffs. Asking Judge Burns to answer questions along the lines Plaintiffs propose "would be destructive of judicial responsibility" by inevitably opening a window into his privileged deliberative process. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). Because Judge Burns's general search warrant procedures constitute privileged mental processes, he must not be forced to testify about them.

Even if the proposed lines of questioning would not inevitably invade Judge Burns's thought processes and would target only facts, "the general prohibition against judicial testimony may be compromised" only in very limited circumstances. *See United States v. Roth*, 332 F. Supp. 2d 565, 568 (S.D.N.Y. 2004). Those limited circumstances exist where: (1) the judge possesses factual knowledge; (2) that

knowledge is highly pertinent to the jury's task; and (3) the judge is the only possible source of testimony on that knowledge. *Id.* (citing *United States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978)).

The testimony Plaintiffs seek from Judge Burns does not fall into these exceptions. As discussed above, Judge Burns's knowledge about the warrant process is not purely factual and probes his thought process. Also, Judge Burns is not the only possible source to detail the City's warrant procedures. Plaintiffs acknowledge that Officer Cappello has already been deposed and testified that he was aware there were children living at the target's residence. (R. 226, Pls.' Resp. at 3-4.) To the extent they seek information regarding the City's practices with respect to warrant applications, they can secure that information from Defendant City rather than from Judge Burns, who is not a party to this case. Furthermore, it is worth noting that Judge Burns represents in his motion that he has no recollection of the specifics of Officer Cappello or the search warrant.

## Conclusion

For the foregoing reasons, the motion to quash is granted.

**ENTER:**

*/s/ Young B. Kim*
**Young B. Kim**
**United States Magistrate Judge**