# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HESTER MENDEZ, *et al.*, | ) |
|           Plaintiffs, | ) No. 18 CV 5560 |
| v. | ) Magistrate Judge Young B. Kim |
| THE CITY OF CHICAGO, *et al.*, | ) |
|           Defendants. | ) March 26, 2020 |

## MEMORANDUM OPINION and ORDER

Hester and Gilbert Mendez, on behalf of themselves and their two minor sons, have sued the City of Chicago and several Chicago police officers under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that Defendants violated their constitutional rights while executing a search warrant at their home. In February 2019 the court denied the City's initial motion to bifurcate Plaintiffs' *Monell* claim. (R. 66; R. 69.) On January 3, 2020, Defendants filed the current joint renewed motion to bifurcate *Monell* claims or, in the alternative, for leave to file a limited motion for summary judgment and stay *Monell* discovery. (R. 211.) For the following reasons, the motion is denied:

## Facts

On November 7, 2017, Defendant Officers executed a search warrant at Plaintiffs' apartment while they were all at home. (R. 125, 4th Am. Compl. ¶ 2.) According to Plaintiffs' complaint, Defendants had secured the search warrant for

the wrong apartment—their intended targets lived in the apartment upstairs. (Id. ¶¶ 2, 28-30.) Plaintiffs further allege that in executing the warrant, Defendant Officers broke open their front door without warning, charged at Gilbert Mendez while pointing their guns at him and shouting profanities, and handcuffed him. (Id. ¶¶ 41, 43, 54.) According to the complaint, one of these officers chased the children down a hallway while pointing a gun directly at their backs. (Id. ¶ 44.) Plaintiffs allege that their older son saw Defendant Officers standing around his father and pointing guns at him while he was face-down on the floor. (Id. ¶ 45.) They further allege that an officer pointed a gun at Hester Mendez and the children for several seconds. (Id. ¶ 51.) According to the complaint, "Chicago police officers' terrorizing conduct" toward the Mendez family caused the children "immediate, severe and lasting emotional and psychological distress and injury." (Id. ¶ 87.)

## Procedural History

Plaintiffs filed this lawsuit in August 2018, and since then have amended their complaint four times. In the current iteration of their complaint, Plaintiffs bring twelve separate counts based on federal and state law. Of the five federal counts, four of them allege that Defendant Officers violated Plaintiffs' constitutional rights by conducting an unlawful search and seizure based on what Plaintiffs claim was an invalid search warrant, failing to retreat once Defendant Officers realized their error, and falsely arresting and imprisoning the adult Plaintiffs in their own home. (R. 125, 4th Am. Compl. ¶¶ 138-79.) The Fourth Amended Complaint does not include an excessive force claim against Defendant Officers. Instead, only the

2

minor Plaintiffs raise the issue of excessive force and only in connection with their *Monell* claim against the City, alleging that failures of official City policies directly caused Defendant Officers to use excessive force in their presence. (Id. ¶¶ 113-37.) There are no *Monell* claims based on illegal search or false arrest.

Defendants previously moved to bifurcate and stay the *Monell* claim in December 2018.[1] (R. 41.) In the original motion they argued that bifurcating the *Monell* claim would prevent unduly burdensome and lengthy discovery and would maximize judicial economy because, according to them, if Plaintiffs could not prove that their constitutional rights were violated, the City could not be held liable on their *Monell* claim. (Id. at 5-9.) They further asserted that if Defendant Officers were found by the jury to have engaged in excessive force, the City would consent to an entry of judgment against it, and although the City would disclaim any admission of liability, it would agree to pay any compensatory damages owed to Plaintiffs based on Defendant Officers' conduct.

The court denied the original motion to bifurcate for several reasons. The court recognized that because there is no excessive force claim against Defendant Officers, a trial on the individual claims against them would not resolve the *Monell* claim, so bifurcation would not promote judicial economy. (R. 69, Feb. 20, 2019 Hearing Tr. at 2:22-3:6.) The court also noted that Plaintiffs have a valid non-monetary interest in pursuing their *Monell* claim that weighs against bifurcation.

---

[1] The City was the only Defendant that actually filed the motion to bifurcate, but Defendant Officers agreed with the relief the City sought. (R. 41 at 9 ("[Co]unsel for the Defendant Officers have been provided with a copy of the Defendant City's Motion to Bifurcate and have indicated their agreement with the motion.").)

3

(Id. at 4:4-4:6.) The court further pointed to what it characterized as Plaintiffs' "reasonable proposal for limiting both the scope of the *Monell* claim itself and the necessary discovery for that claim." (Id. at 3:16-3:18.) The court noted that Plaintiffs' *Monell* discovery would target only the City's "policies and procedures regarding the use of force against or in the presence of children," and concluded that this limited scope mitigated any concerns about the burdens of *Monell* discovery.

The parties are now nearing the end of the case's fact discovery phase, and in an effort to stave off pending *Monell* discovery, Defendants have renewed their motion to bifurcate and stay the *Monell* claim or, in the alternative, they seek a stay of discovery while they move for summary judgment on the limited issue of whether Defendant Officers used excessive force in the children's presence. (R. 211.) Defendants frame their current request as a "renewed motion" rather than a motion to reconsider. The renewed motion is premised on Defendants' assertion that Plaintiffs' requests for *Monell* discovery have far exceeded the limited scope that convinced the court to deny their original motion. In addition to arguing that the *Monell*-related discovery requests are unduly burdensome, Defendants renew their argument that the *Monell* claim may not even have to be litigated if Plaintiffs do not show that Defendant Officers engaged in excessive force. They also resurrect the argument that bifurcation would not prejudice Plaintiffs given the City's representation that it will agree to the entry of judgment on the *Monell* claim in the event that Plaintiffs prevail on the excessive force issue.

4

Analysis

The district court has considerable discretion in determining whether to order separate trials of discrete claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000). Whether to allow bifurcation is a decision that is made on a case-by-case basis, looking at the specific facts and claims presented. *See Estate of McIntosh v. City of Chi.*, No. 15 CV 1920, 2015 WL 5164080, at *2 (N.D. Ill. Sept. 2, 2015). In recent years motions to bifurcate *Monell* claims have become "commonplace," and there is "a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *Williams v. City of Chi.*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018) (quotation and citation omitted); *see also Carter v. Dart*, No. 09 CV 956, 2011 WL 1466599, at *3 (N.D. Ill. April 18, 2011). That said, "because bifurcation risks additional delay, it has remained the exception and not the rule." *Tate v. City of Chi.*, No. 18 CV 07439, 2019 WL 2173802, at *3 (N.D. Ill. May 20, 2019) (quotation and citation omitted).

**A.    Judicial Economy**

In renewing their motion to bifurcate Defendants first raise an argument the court considered and rejected in resolving the original motion—that bifurcation will promote judicial economy because *Monell* discovery may never be necessary. Specifically, Defendants argue that Plaintiffs can only succeed on their *Monell* claim—which is predicated on the City having a policy or practice of failing to properly train or supervise officers in the use of force during the execution of

5

warrants when children are present—by proving that Defendant Officers engaged in excessive force against the minor Plaintiffs. As such, according to Defendants if Plaintiffs fail to show at trial that Defendant Officers engaged in excessive force, their *Monell* claim must also fail. They reason that because there may be no need to try the *Monell* claim, bifurcating and staying *Monell* discovery at this stage in the litigation would promote judicial economy.

A *Monell* claim allows a plaintiff to recover monetary damages under 42 U.S.C. § 1983 against a municipality if it has a widespread or well-settled practice or custom that is responsible for, or the moving force behind, a constitutional violation. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303, 306 (7th Cir. 2010). In many cases, especially those involving claims of excessive force, a *Monell* claim may hinge on a showing that individual officers are liable for a constitutional violation. *Horton v. City of Chi.*, No. 13 CV 6865, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016). In such circumstances, bifurcation may preserve judicial economy by staving off *Monell* discovery that may be unnecessary if the underlying excessive force claim fails. *Id.* But "district courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that . . . are distinct from the claims against individual defendants." *Swanigan v. City of Chi.*, 775 F.3d 953, 963 (7th Cir. 2015). That is because "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas*, 604 F.3d at 305 (emphasis in original). Where an adverse resolution of the individual claims would not necessarily dispose of a *Monell* claim, bifurcating and

6

staying the *Monell* claim would actually reduce efficiency by delaying the ultimate adjudication of all of the plaintiffs' claims. *Cadle v. City of Chi.*, No. 15 CV 4725, 2015 WL 6742070, at *3 (N.D. Ill. Nov. 2, 2015).

In its initial bifurcation ruling in this case the court recognized that a trial on Plaintiffs' claims against Defendant Officers, which are based entirely on illegal search and false arrest, would not resolve the *Monell* claim, which is rooted in the excessive force allegations. (R. 69, Feb. 20, 2019 Hearing Tr. at 2:22-3:6.) In other words, the court concluded that an adverse finding against Defendant Officers in this case would not resolve the *Monell* claim. As a result, the court found that there are no efficiencies to be gained by delaying litigation on the *Monell* claim.

In the time since the court's initial ruling, nothing in the landscape of this litigation or the law in general has changed in a way that would justify shifting the court's original analysis of the judicial economy factor. If anything, caselaw issued in the meantime further supports the court's initial determination. Specifically, in *Tate*, 2019 WL 2173802, at *4-*5, the court denied a motion to bifurcate in a case presenting similar facts to those that are at play here. In *Tate*, the plaintiffs alleged that a SWAT team of Chicago police officers executed a search warrant they had obtained for an incorrect address. *Id.* at *2. The SWAT team broke open the plaintiffs' front door, confronted four children in the apartment, and pointed their guns and screamed at the children before ordering them out of the apartment. *Id.* The plaintiffs in *Tate* brought claims for unlawful search and false arrest pursuant to Section 1983, along with a *Monell* claim rooted in the alleged use of excessive

7

force against the children. *Id.* at *4. In resolving the bifurcation motion, the court noted that the "complaint is atypical in that there is no accompanying claim against the individual officers for use of excessive force." *Id.* Because the *Monell* claim was independent of any finding of liability against the individual officers, the court found that "the claim could be adjudicated regardless of the outcome in the trial against the individual officers," and "bifurcation would not serve the interests of judicial economy." *Id.* at *5.

Just as in *Tate*, Plaintiffs here have structured their complaint in a way that makes the *Monell* claim independent from any finding of liability on the claims against Defendant Officers. Even if Defendant Officers were to succeed at trial on all of the claims against them, the case would not be over. Thus, bifurcation has the potential to create more work, not less. That is because if the court were to bifurcate and stay the *Monell* claim, many of the same witnesses needed to testify at the first trial regarding the alleged illegal search and false arrest claims would likely have to testify again at the second trial regarding the alleged use of excessive force claim. Under these circumstances, judicial economy is better served by trying the claims together.

Defendants assert that the court can skirt the efficiency problem by bifurcating and staying the *Monell* claim and then issuing to the jury in the first trial a special interrogatory to answer whether Defendant Officers engaged in excessive force. They argue that if the special interrogatory answer is "no," there would be no need for discovery on the *Monell* claim. But this suggestion does not

8

change the fact that the theory of municipal liability in this case is independent of the theory of liability against the individual officers, and that factor weighs against bifurcation. *See Thomas*, 604 F.3d at 305. Moreover, if the special interrogatory answer were "yes," Plaintiffs would still be entitled to try their *Monell* claim. The City represents that it will agree to the entry of judgment and pay compensatory damages on the *Monell* claim in the event that Plaintiffs prevail on the excessive force issue. But through that agreed judgment the City would disclaim liability, (see R. 211-6, Ex. F, Limited Consent ¶¶ 3-4), and as discussed below, that disclaimer would deprive Plaintiffs of the opportunity to obtain a judgment against the City as a deterrent against future misconduct. Because bifurcation is likely to make the issues more complicated rather than less, and the proposed special interrogatory does not eliminate that risk, in the particular circumstances of this case Defendants have not shown that judicial economy is best served by bifurcating the *Monell* claim. *See Scott v Buncich*, No. 16 CV 114, 2018 WL 1556412, at *8 (N.D. Ill. March 30, 2018).

**B.    Discovery Burden**

Defendants' second argument is their only new one. They argue that Plaintiffs' *Monell* discovery is broader than originally proposed to the court, and that allowing *Monell* discovery to go forward will cause undue delay and unnecessary costs. In denying the original motion, the court was swayed by what it characterized as Plaintiffs' "reasonable proposal for limiting both the scope of the *Monell* claim itself and the necessary discovery for that claim," by focusing on "the

9

City's lack of appropriate policies and procedures regarding the use of force against or in the presence of children." (R. 69, Feb. 20, 2019 Hearing Tr. at 3:16-3:23.) According to the renewed motion, Plaintiffs have abused this ruling by issuing 118 requests for document production, identifying 13 City witnesses and 6 non-City witnesses they seek to depose, and issuing a Rule 30(b)(6) notice spanning 26 pages and 28 topics. (R. 211, Mot. at 4-7.)

For several reasons, the court rejects Defendants' argument that the scope of discovery merits revisiting the bifurcation decision. First, in their response Plaintiffs make clear that they have already reined in the discovery requests Defendants highlight in their motion. Plaintiffs assert that they are now seeking only three Rule 30(b)(1) witnesses and that they have reduced their Rule 30(b)(6) topics from 28 to 17. (R. 241, Pls.' Resp. at 12, 23.) Second, Plaintiffs point out that written *Monell* discovery is already substantially complete, so it makes little sense to bifurcate the remaining discovery when the parties have already invested time and effort into *Monell* discovery. Third, as the *Tate* decision makes clear, this is not the only case in which the City recently has been asked to gather discovery aimed at its policies and practices around the use of excessive force in the presence of children. *See Tate*, 2019 WL 2173802, at *3. Accordingly, the City is likely "very familiar with this type of discovery," having produced similar information in other cases, and that familiarity mitigates against their complaints about the added burdens imposed here. *Cadle*, 2015 WL 6742070, at *2.

10

Most importantly, Defendants' concerns regarding the scope of the remaining *Monell* discovery can be addressed best through motions for protective orders. The court is prepared to deal with such arguments through the usual course of motion practice and by tailoring requests as necessary to ensure that the remaining *Monell* discovery does not bog down the case or hold back its efficient resolution. *See id.* Operating within those parameters should prevent the remaining discovery from being as overwhelming to the City as it contends. In short, there can be no doubt that *Monell* discovery expands the scope of discovery. But Defendants have not shown here that the discovery burden outweighs Plaintiffs' interest in being the master of their complaint and pursuing all of their claims as a cohesive whole. *See Estate of Loury v. City of Chi.*, No. 16 CV 4452, 2017 WL 1425594, at *5 (N.D. Ill. April 20, 2017).

**C.     Undue Prejudice**

Finally, Defendants argue that failing to bifurcate and stay *Monell* discovery at this point risks unfair prejudice to them, while conversely, granting the motion poses no harm to Plaintiffs. They argue that failure to bifurcate the *Monell* claim may prejudice Defendant Officers at trial because evidence supporting Plaintiffs' policy claim may create an unfair impression that they are part of a pattern in which Chicago police officers routinely act improperly with respect to use of force around children. But Defendants' argument on this front has been routinely rejected in this district. *See, e.g., Tate*, 2019 WL 2173802, at *4; *Estate of Loury*, 2017 WL 1425594, at *4 (collecting cases). It would be speculative at this point to

11

predict what evidence might be offered at trial and to weigh the potential prejudice posed by that evidence. The best way to stave off Defendants' prejudice concern is to use motions *in limine* and limiting instructions at trial to make sure the jury understands the distinctions between the claims against Defendant Officers and the City.

As for Defendants' argument that bifurcation poses no prejudice to Plaintiffs, that argument rests largely on their view of their offer to agree to an entry of judgment against the City on the *Monell* claim in the event that a jury concludes that Defendant Officers used excessive force. Defendants point out that even if Plaintiffs were able to show that the officers used excessive force in the presence of the Mendez children, the only relief they could recover on the *Monell* claim is compensatory damages because the City is immune from punitive damages. Defendants reason that there would be no benefit to Plaintiffs pursuing the *Monell* claim if the City agrees to pay compensatory damages and reasonable attorneys' fees because there is no other recovery available to them.

Again, the court rejected Defendants' argument in ruling on the original bifurcation motion, noting that Plaintiffs' interests are not purely monetary. (R. 69, Feb. 20, 2019 Hearing Tr. at 4:4-4:6.) In their response to the renewed motion, Plaintiffs assert that a large part of their motivation for pursuing the *Monell* claim is to deter future violations by shining a light on the City's policies and practices with respect to the use of force around children. They argue that the City should not be allowed to insulate itself from accountability for those policies by leveraging

their agreement to a limited judgment to prevent the facts surrounding those policies from coming to light. In similar cases courts in this district have recognized the plaintiffs' "interest in pursuing their claims with an eye toward institutional reform."[2] *See Tate*, 2019 WL 2173802, at *6; *see also Estate of Loury*, 2017 WL 1425594, at *5; *Estate of McIntosh*, 2015 WL 5164080, at *9-*10. And the court agrees that offering to agree to a limited judgment should not automatically allow the City to skirt its responsibility for policies that give rise to violations of Constitutional rights. That is especially so because the City's proposed stipulation of judgment clearly disclaims any admission of liability on the City's part, meaning it is unlikely to have any deterrent effect with respect to the City's future conduct.

**D.    Summary Judgment**

As an alternative resolution to the bifurcation motion, Defendants argue that they should be allowed to file a motion for partial summary judgment on the *Monell* claim addressing only whether Defendant Officers engaged in excessive force. They argue that *Monell* discovery should be stayed until the resolution of this motion. According to Defendants, there is video footage plainly contradicting Plaintiffs' version of events that would preclude any finding of excessive force. Plaintiffs respond that such a motion would be a waste of time because there are genuine

---

[2] In their reply Defendants assert that Plaintiffs' public policy goals "can be – and have in part already been – achieved by other means," including a new state law in one of their names and updated police training and policies. (R. 248, Defs.' Reply at 6.) But Defendants are not entitled to dictate when Plaintiffs' goals have been satisfied, and even if the City has started to take steps toward the reform Plaintiffs seek, there would still be value to Plaintiffs in "the deterrence and reform that would be furthered by a judgment holding Defendant City liable" for Defendant Officers' actions. *Estate of McIntosh*, 2015 WL 5164080, at *10.

13

issues of material fact about Defendant Officers' conduct that the video does not conclusively resolve and because there will be conflicting testimony about whether they pointed their guns at the minor Plaintiffs.

It is not for this court to pre-judge the merits of a future summary judgment motion. If Defendants believe the undisputed facts would support their limited motion, they are free to file it. But given that written *Monell* discovery is almost complete, the court sees no reason to halt the case's momentum to wait for a possibly forthcoming summary judgment motion. For now, the most efficient course is to finish what the parties have started with an eye toward trying the case as a unified whole. Accordingly, the court denies Defendants' request for a discovery stay pending a ruling on their anticipated motion for partial summary judgment on the excessive force question.

## Conclusion

For the foregoing reasons, Defendants' joint renewed motion to bifurcate *Monell* claims or, in the alternative, to stay *Monell* discovery is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**