## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HESTER MENDEZ, *et al.*, | ) | |
| | ) | No. 18 CV 5560 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| THE CITY OF CHICAGO, *et al.*, | ) | |
| | ) | June 29, 2020 |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiffs Hester and Gilbert Mendez, on behalf of themselves and their two minor children Jack and Peter, have sued the City of Chicago and several police officers alleging that Defendants violated their constitutional rights when executing a search warrant at their home. In the course of discovery, Defendants obtained video footage of an interview that Plaintiffs' gave to CBS News ("CBS") during which they discussed the underlying incident. Defendants now move for leave to depose eight-year-old Jack about the statements he made during the television interview. For the following reasons, their motion is granted but subject to the conditions described herein:

### Background

On November 7, 2017, Defendant Officers executed a search warrant at Plaintiffs' apartment while they were all at home. (R. 125, 4th Am. Compl. ¶ 2.) According to Plaintiffs, Defendants had secured a search warrant for the wrong apartment—their intended targets lived a floor above them. (Id. ¶¶ 2, 28-30.)

Plaintiffs allege that Defendant Officers broke open their front door without warning, charged at Plaintiff Gilbert Mendez while pointing their guns at him and shouting profanities, and then handcuffed him. (Id. ¶¶ 41, 43, 54.) Plaintiffs also allege that one of Defendant Officers chased Jack and Peter, then five and nine years old, respectively, down a hallway while pointing a gun directly at their backs. (Id. ¶ 44.) They further allege that an officer pointed a gun at Hester Mendez and the children for several seconds as they lay on the floor. (Id. ¶ 51.) According to the complaint, "Chicago police officers' terrorizing conduct" toward the Mendez family caused the children "immediate, severe and lasting emotional and psychological distress and injury." (Id. ¶ 87.)

Following the incident, Plaintiffs' sat for an "extended amount of time" for an interview with a CBS reporter regarding this encounter. (R. 270, Defs.' Mot. at 2.) Defendants obtained video footage of Plaintiffs' interviews in discovery, which shows Jack answering questions about the incident and describing his experience. (Id.) At the time of this television interview, Jack was six years old. (R. 190 at 2 (CBS's Resp. to Mot. to Enforce Subpoena).) Defendants point out that in the video footage Jack offers inconsistent testimony about the encounter. For example, in parts of the footage, Jack denies that guns were ever pointed at him during the incident, but in other parts he says the opposite. (Id.) Defendants argue that Jack's denials during the television interview directly contradict some of Plaintiffs' main allegations in this case, which is predicated upon allegations of injuries their children sustained as a result of Defendant Officers pointing guns at them. (Id. at

7; *see* R. 125, 4th Am. Compl. ¶¶ 2, 41-42, 79.)  Although Defendants had previously indicated that they did not wish to depose Jack, they now argue that they are entitled to depose him to determine the scope of his knowledge about the subject encounter and his alleged injuries in light of the CBS footage.  (R. 270, Defs.' Mot. at 7.)  Specifically, Defendants seek to explore whether Jack's memory of the encounter contradicts Plaintiffs' allegations that Defendant Officers pointed their guns directly at him and Peter.  (Id.)

## Analysis

Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information about "any matter, not privileged, which is relevant to the subject matter involved in the pending action" regardless of its admissibility at trial. Additionally, Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court" subject to the restrictions set forth therein.  Despite this broad reach, the court may limit discovery, including the scope and manner of a deposition, where necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *see also Gile v. United Airlines, Inc.*, 95 F. 3d 492, 496 (7th Cir. 1996) (noting that the court enjoys broad discretion to determine the appropriate limitations for discovery).  The "burden rests upon the objecting party to show why a particular discovery request is improper."  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. April 20, 2006).

Turning to the substance of the motion, the information Defendants seek from Jack is no doubt relevant to the parties' claims and defenses here. *See* Fed. R. Civ. P. 26(b)(1) ("[A] party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). At the same time, however, the court appreciates Plaintiffs' concern about protecting Jack's emotional well-being.

Defendants argue that it is necessary to depose Jack because the CBS footage they obtained depicts Jack "unequivocally" denying that guns were pointed at him. (R. 270, Defs.' Mot. at 6.) Plaintiffs respond that Defendants do not need Jack's deposition because they already have complete access to the video footage depicting Jack's rendition of his experience. (R. 288, Pls.' Resp. at 10.) Plaintiffs contend that under Federal Rule of Evidence 403, "[e]ven otherwise relevant testimony may be unnecessary if it is substantially outweighed by the danger of wasting time or presenting cumulative evidence." They argue that a deposition would be cumulative because Jack has admitted on video that guns were pointed at him, and his family members have testified that guns were pointed at Jack during the encounter. (Id.; R. 288-5, Ex. D.)

Another court in this circuit has required minor plaintiffs to sit for depositions in the face of assertions that their testimony would be cumulative. In *Arassi v. Weber-Stephen Prods. LLC*, No. 13 CV 684, 2014 WL 1385336, at *3 (E.D. Wis. April 9, 2014), the plaintiffs argued that the depositions of two minors should be barred because three adult witnesses had already been deposed on the same

topics. The court found that "[a]lthough other witnesses have been deposed as to both matters, the children may [have] different facts or perspectives." *Id.* Accordingly, the court allowed the depositions of the two minors to proceed with restrictive conditions "fashioned to protect the children from any irreparable harm." *Id.* at 2.

As was true in *Arassi*, here Jack may have different facts or perspectives than those of his parents or older brother regarding their encounter with Defendant Officers and Defendants have provided adequate factual foundation to support that suspicion. The court therefore rejects Plaintiffs' argument that Jack's deposition is cumulative and unnecessary. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Especially where, as here, Jack has offered contradictory statements regarding the subject encounter, Defendants are entitled to explore those inconsistencies, as well as his recollection of whether guns were pointed at him. They also may question Jack to determine whether someone has coached him to say that guns were pointed at him. (R. 306, Defs.' Reply at 10-11.)

Plaintiffs argue that the potential harm to Jack outweighs Defendants' need for his deposition. They explain that Jack should be shielded from sitting for a deposition because, according to them, he has mental and verbal impairments that make him vulnerable to manipulation and that render him incompetent to testify. (R. 288, Pls.' Resp. at 9-10.) Plaintiffs argue that a witness is competent to testify

only "if he is capable of communicating relevant material and understands he has an obligation to do so." (Id. at 6.) According to them, Jack is not competent to testify because he would be unable to understand Defendants' questions because of his impairments. (Id. at 9.) Plaintiffs further suggest that even if he did understand the questions, Jack would be unable to communicate his responses truthfully and accurately. (Id.) Defendants counter that Jack is competent to testify because children are presumed to be competent witnesses. (R. 270, Defs.' Mot. at 5 (citing 18 U.S.C.A. § 3509(c)(2)).)

The court's decision in *Sauer v. Exelon Generation Co., LLC*, 280 F.R.D. 404, 407 (N.D. Ill. 2012), is instructive here. In *Sauer* the court found that the defendants could depose a minor plaintiff with "difficulties with retention and retrieval of information" following brain surgery and treatment. *Id.* at 408. The court reasoned that so long as the minor had "information relevant to the subject matter of her claims" and the objecting party did not "allege any annoyance, embarrassment, oppression, or undue burden or expense," then the defendants were entitled to depose her. *Id.* To carry their burden to establish good cause to preclude a deposition, plaintiffs would have needed to "demonstrate that [the plaintiff was] without *any* ability to observe, remember, communicate or to understand that the oath/affirmation imposes a duty to tell the truth." *Id.* (emphasis added); *see also Simmons*, 2017 WL 3704844, at *7 (finding that a minor witness needs to "sufficiently express[] an understanding of the need to tell the truth" but that the witness's memory need not be "perfect" for the witness to be competent).

6

Thus, the court rejects Plaintiffs' argument that Jack's mental and verbal impairments rebut the presumption of competence. As noted in *Sauer*, the Seventh Circuit has found that "the competency of a witness to testify . . . is a limited threshold decision . . . as to whether a proffered witness is capable of testifying in any meaningful fashion whatsoever." *United States v. Banks*, 520 F.2d 627, 630 (7th Cir. 1975). Here the court finds that Plaintiffs have not met their burden to establish good cause to preclude Jack's deposition because of his verbal and mental impairments. Plaintiffs have not provided evidence to suggest that Jack's impairments preclude his ability to testify in "any meaningful fashion whatsoever." *Banks*, 520 F.2d at 630. After all, Plaintiffs did not have any issues with Jack sitting for an interview with a reporter in front of a camera.

In addition to arguing that Jack should be shielded from deposition because of his impairments, Plaintiffs argue that a deposition would re-traumatize Jack. (R. 288, Pls.' Resp. at 10.) Plaintiffs represent that Jack, now eight years old, is receiving psychiatric treatment and counseling for his alleged trauma stemming from the encounter. (Id.) Plaintiffs assert that questioning about the incident is likely to cause Jack emotional harm. (Id.) Defendants counter that because Hester and Gilbert Mendez chose to name Jack as a plaintiff in this suit, they intentionally placed his recollections of the incident at issue here. (R. 270, Defs.' Mot. at 3; R. 306, Defs.' Reply at 2.) They also did so when they allowed Jack to give an extended media interview in which he shared his experiences and listened to his family's recollections regarding the incident. (R. 306, Defs.' Reply at 2, 5.) Defendants

argue that many of Plaintiffs' concerns can be assuaged by following guidelines such as those established by the court for Peter's deposition. (R. 270, Defs.' Mot. at 7.)

Plaintiffs have not met their burden of showing good cause to preclude Jack's deposition based on their assertion that Jack is likely to be traumatized by a deposition. The court appreciates Plaintiffs' concern over Jack's emotional vulnerability, but Jack was able to answer questions about the incident posed by a reporter and he remains a named plaintiff in this case. That Defendants may need to exercise extra caution and care in questioning Jack does not render Jack incapable of sitting for a deposition with appropriate limitations.

Both parties acknowledge that the court can set limits on depositions to address specific concerns raised by the parties. (R. 270, Defs.' Mot. at 4-6; R. 288, Pls.' Resp. at 13-14.) This court has the authority to set parameters on the deposition of minors to protect the minor witness from unnecessary trauma. (See R. 288-9, Pls.' Resp., Ex. H.; R. 288-10, Pls.' Resp., Ex. I.) Because of Jack's impairments, Plaintiffs argue that Jack's deposition should be limited to 45 minutes total. (R. 288, Pls.' Resp. at 13.) They also argue that the deposition should take place at the courthouse or Plaintiffs' counsel's office. (Id. at 14-15.) Defendants do not object to the limitation on location but request seven hours for deposition and that the time Plaintiffs' counsel uses to question Jack not count toward Defendants' time to question him. (R. 270, Defs.' Mot. at 4.)

The parties also dispute whether Defendants should be able to use leading questions to examine Jack. Defendants contend that they should be allowed to use

leading questions, citing *United States v. Boyles*, 57 F.3d 535, 547 (7th Cir. 1995), in which the Seventh Circuit recognized that the government's use of leading questions with a minor was "entirely proper." (R. 270, Mot. at 4-5.) The court in *Boyles* reasoned that leading questions were appropriate because they "helped to elicit difficult testimony from an infant, and they aided the court in its search for the truth." *Boyles*, 57 F.3d at 547. Defendants also cite Federal Rule of Evidence 611(c), which allows leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." (R. 270, Mot. at 6.) Plaintiffs request that Defendants' ability to use leading questions be limited. (R. 288, Pls.' Resp. at 14-15.) They contend that while "ordinarily" the court allows leading questions on cross-examination, there are exceptions to this general rule, including during examinations of minor witnesses. (Id. at 8).

The court finds that Defendants should be prohibited from asking leading questions during Jack's deposition. The inability to ask leading questions is a procedural safeguard that can be used to protect child witnesses. *Idaho v. Wright*, 497 U.S. 805, 813 (1990); *see also Harris v. Thompson*, 698 F.3d 609, 642 (7th Cir. 2012). Furthermore, the right to use leading questions is not absolute and is subject to the discretion of the district court. *United States v. Hall*, 165 F.3d 1095, 1117 (7th Cir. 1999). While the Seventh Circuit allowed leading questions in *Boyles*, 57 F.3d at 547, the minor witness in *Boyles* did not show verbal or mental impairments, as is the case here. This court did allow the use of leading questions

during Peter's deposition, but Peter is four years older than Jack and was not shown to have any documented impairments.

Having determined that Defendants are entitled to depose Jack to test his recollection of his encounter with Defendant Officers, the court agrees that certain limitations are necessary to protect Jack's well-being. Those limitations are as follows: (1) Defendants are limited to three hours total for the deposition; (2) Plaintiffs are permitted to question Jack first,[1] but they are not to ask leading questions and the time they spend questioning Jack will not count against Defendants' allotted time; (3) the deposition must take place at Plaintiffs' attorney's office or another venue mutually acceptable to the parties; (4) Defendants are limited to having only two attorneys present at the deposition (one for Defendant City and one for Defendant Officers); (5) Jack is entitled to have his mother and/or father present during the deposition; (6) Jack is entitled to as many breaks as he wishes, but the break time will not count against Defendants' allotted time; (7) Defendants are barred from asking leading questions but may use exhibits, including video footage; and (8) Plaintiffs may retain the services of Judge Stuart A. Nudelman (Retired)[2] to be present for the deposition sessions for any necessary

---

[1] The court is not suggesting that Plaintiffs must ask questions during the deposition. In fact, the court expects that Plaintiffs would not ask any questions given their arguments in opposition to the motion. However, the court is requiring this sequence in the event Plaintiffs choose to question Peter.

[2] Defendants recommend that Judge Nudelman supervise Jack's deposition because he was present for Peter's deposition and would be familiar with the case and counsel in attendance. (R. 306, Defs.' Reply at 11.) The court agrees that Judge

rulings on any issues that may arise if they wish. Plaintiffs will bear the cost of retaining Judge Nudelman. Although Judge Nudelman may exercise his own discretion to resolve issues or objections that may surface during the deposition, Defendants will be entitled to exercise their right to pose objections under Rule 32(b) at a later time.

## Conclusion

For the foregoing reasons, the motion for leave to depose Plaintiff Jack Mendez is granted subject to the conditions described in this order.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

---

Nudelman would be the best choice if Plaintiffs wish to have a neutral present during Peter's deposition.