IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HESTER MENDEZ, et al | ) | Case No. 18-cv-5560 |
| | ) | |
| Plaintiffs, | ) | Judge Franklin U. Valderrama |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| THE CITY OF CHICAGO, et al | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO BIFURCATE THE MINOR PLAINTIFFS' *MONELL*
CLAIMS FOR TRIAL**

NOW COME Defendants, OFFICERS JOSEPH T. CAPELLO IV (#10626); LT. SAMUEL DARI (#603); MICHAEL W. DONNELLY (#13784); SGT. RUSSELL A. EGAN (#998); MICHAEL J. GUZMAN (#15911); JOSE M. HERNANDEZ (#15925); and ERIC M. SEHNER (#11641), ("Defendant Officers") by their attorneys, Mohan Groble Scolaro, P.C., and Defendant CITY OF CHICAGO, by one of its attorneys, Marion C. Moore, Chief Assistant Corporation Counsel of the City of Chicago, (collectively, "Defendants"), and for their Motion to Bifurcate the Minor Plaintiffs' *Monell* Claims for Trial, state as follows:

**INTRODUCTION**

In Count I of their operative Complaint, Plaintiffs Peter and Jack Mendez (the Minor Plaintiffs) allege that various City policies caused two Defendant Officers, Officer Capello and Sgt. Egan, to commit excessive force by pointing guns at them during a valid search warrant. The alleged City policies include claims of widespread practice of excessive force against minors (ages 0-14), failure to investigate and discipline, failure to train officers, and maintaining a code of silence. Defendants have moved for summary judgment on all claims in this case, which is still pending.[1] The Court has

---
[1] Plaintiffs have also filed a partial cross motion for summary judgment.

set trial for April 21, 2025. To address the possibility that some or all of Plaintiffs' *Monell* claims may survive, Defendants now move to stay and bifurcate trial on those claims in order to prevent undue prejudice and preserve judicial economy.

This Court has considerable discretion to bifurcate a matter for trial. *Krocka v. City of Chi.,* 203 F.3d 507, 516 (7th Cir. 2000). Two key points weigh in favor of bifurcation of the *Mendez* case. First, a combined trial that includes the *Monell* claims would severely and irreparably prejudice both the individual Defendants and the City. The underlying claims pertain to the execution of a search warrant which took less than 15 minutes and was largely captured on bodyworn camera. By contrast, the *Monell* evidence could require multiple mini-trials on dozens of unrelated incidents, thousands of pages of documents unrelated to the underlying incident, and testimony from potentially several dozen lay witnesses and several expert witnesses. All that evidence would pertain to alleged misconduct spanning five years wholly unrelated to Defendant Officers' conduct during the underlying incident and would only serve to contaminate the minds of the jury. Courts have notably held that bifurcation may be proper solely because a joint trial would be prejudicial to the moving party. *See, e.g.*, *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007) (finding no error in the District Court's decision to bifurcate liability and damages claims for trial); *Washington v. Boudreau*, No. 16 C 1893 and 16 C 1970, 2023 U.S. Dist. LEXIS 6589, at *18-20 (N.D. Ill. Jan. 13, 2023) (Kness, J.) (finding the risk of unfair prejudice to defendants justified bifurcation for trial). Second, Plaintiffs gain no additional damages from the *Monell* claims, and judicial economy favors bifurcation. The length of this trial would be <u>substantially</u> reduced based on the volume of *Monell* witnesses and exhibits. As such, Defendants respectfully request bifurcation of the *Monell* claims for trial.

## BACKGROUND

This case arises from the execution of a valid search warrant at Plaintiffs' second floor apartment at 3557 S. Damen Avenue on November 7, 2017. Plaintiffs allege that Defendant Officers

2

Egan and Capello used excessive force against the minor Plaintiffs by pointing guns. In addition to alleging that Defendant Officers violated their Constitutional rights and committed various state law torts, Plaintiffs also bring *Monell* claims against Defendant City. [Doc. 125].[2]

Before embarking on discovery, Defendants filed a motion to bifurcate and stay Plaintiffs' *Monell* claims before then-District Court Judge John Z. Lee on December 10, 2018. [Doc. 41]. Plaintiffs claimed that they would seek only six depositions and that they would keep their *Monell* claims narrow. [Doc. 55]. The Court denied the first motion to bifurcate, relying, in part, on Plaintiffs' promise of "laser-beam focused" *Monell* discovery. [Doc. 51, 69]. Specifically, the Court reasoned that its concerns regarding the burden of *Monell* discovery "[was] mitigated by plaintiffs' more specifically delineated scope of the *Monell* claims and their discovery." [Doc. 69, pg. 3:16-4:3].

During discovery, it became clear the scope of needed *Monell* discovery was nowhere near "laser-focused." In the middle of this discovery, Defendants filed a renewed motion to bifurcate and stay the *Monell* claims on January 3, 2020 before Magistrate Judge Kim. [Doc. 211]. Magistrate Judge Kim denied the Motion, explaining that the Plaintiffs had structured their complaint in a way that makes the *Monell* claims independent from any finding of liability on the claims against the Defendant Officers[3] while also noting that "[i]t would be speculative at this point to predict what evidence might be offered at trial and to weigh the potential prejudice posed by that evidence." [Doc. 253, at 11-12).

---

[2] Plaintiffs' Fourth Amended Complaint contains 12 counts: Count I – *Monell* claims against Defendant City by minor Plaintiffs Jack and Peter Mendez; Count II – "Unlawful Search – Invalid Warrant" against all Defendants by all Plaintiffs; Count III – Supervisory liability against Defendant Egan by all Plaintiffs; Count IV – "Unlawful Search/Warrantless 'Entry'/Failure to Retreat" against all Defendants by all Plaintiffs; Count V – False Arrest and False Imprisonment against all Defendants by Plaintiffs Gilbert Mendez and Hester Mendez; Count VI – Assault claim under state law by all Plaintiffs against all Defendants; Count VII – Battery claim under state law by Plaintiff Gilbert Mendez against all Defendants; Count VIII – False arrest and false imprisonment under state law against all Defendants by Plaintiffs Gilbert Mendez and Hester Mendez; Count IX – "Intentional and/or Negligent Infliction of Emotional Distress" against all Defendants by minor Plaintiffs Jack and Peter Mendez; Count X – Trespass claim under state law against all Defendants by all Plaintiffs; Count XI – *Respondeat Superior* against Defendant City; Count XII – Indemnification against Defendant City. [Doc. 125].
[3] In its ruling on this issue, the Court relied heavily on the Court's ruling in *Tate v. City of Chicago*, No. 18 C 7439, 2019 U.S. Dist. LEXIS 84272 (N.D. Ill. May 20, 2019) (Kocoras, J.). However, since that ruling multiple courts have granted motions to bifurcate in cases in which the operative complaint contained *Monell* claims that were

3

*Monell* discovery therefore progressed, and the City has produced tens of thousands of pages of documents, including its written policies, its training materials, and years' worth of investigations into alleged excessive force against children. Depositions of at least a dozen 30(b)(6) witnesses were taken in connection with this case and companion cases filed by Plaintiffs' counsel. Furthermore, Plaintiffs' counsel listed numerous witnesses in their disclosures that they may seek to call at trial, including more than 40 children and parents who have claimed that they had been the victim of excessive force by Chicago police and who are or were represented by Plaintiffs' counsel. In addition, Plaintiffs have offered three expert witnesses whose testimony will largely or exclusively go to the *Monell* claims -- police practices expert John J. Ryan, statistician Max Schanzenbach and attorney Lisa Thurau.[4] Defendants have two counter-experts whose testimony pertains primarily to the *Monell* claims, police practices expert Jeffrey J. Noble and statistician Matthew Hickman.

Defendants filed a fully dispositive motion for summary judgment, and at a recent status conference, the Court indicated a ruling is forthcoming. However, because preparation for any level of *Monell* trial would be extensive, Defendants now file this motion to bifurcate to prevent unfair prejudice involved and promote judicial economy.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 42 states, in relevant part, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Only one of these criteria need be met for bifurcation to be appropriate. *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir.

---

similarly independent from the claims against the Defendant Officers. *See Blassingame v. City of Chicago*, No. 19 C 7287, 2023 U.S. Dist. LEXIS 37659, at * (N.D. Ill. Mar. 7, 2023) (Kness, J.); *Lyons v. City of Chicago*, No. 20 C 3412, 2023 U.S. Dist. LEXIS 37660, at *10-16 (N.D. Ill. Mar. 7, 2023) (Kness, J.); *Archie v. City of Chicago*, Case No. 19 C 4838, Doc. 179, 182 (N.D. Ill. Aug. 25, 2021) (Gettleman, J.).

[4] Defendants moved to bar some or all of the opinions of these three experts. Dkt. No. 477. This motion was granted in part and denied in part, with the end result being that much of their testimony will be allowed at trial. See Dkt. No. 577.

1994). "[C]ourts have broad discretion in deciding whether to bifurcate issues presented in a case or to try them separately." *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 928 (N.D. Ill. 2012); see also *Krocka*, 203 F.3d at 516. Bifurcation is appropriate if "the separation would prevent prejudice to a party or promote judicial economy." *Chlopek*, 499 F.3d at 700. That is, of course, so long as the non-moving party suffers no prejudice or a violation of the Seventh Amendment, which guarantees a jury trial in federal civil cases.[5] *Id.* Weighing a motion to bifurcate requires "a pragmatic mindset"[6] and is a "case-specific assessment of the advantages and disadvantages of bifurcation." *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 U.S. Dist. LEXIS 54116, at *4 (N.D. Ill. July 16, 2008) (Aspen, J.). A court's decision to bifurcate claims will be overturned "only upon a clear showing of abuse." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

## ARGUMENT

Bifurcation and stay of the *Monell* claims (Count I) is ideal for Rule 42's interests of avoidance of undue prejudice, convenience, economy, and expedition. Since Defendant City would agree to an entry of judgment if Plaintiffs prove that the use of force used by Officer Cappello and Sgt. Egan was unreasonable under the Fourth Amendment[7], bifurcation and a stay of the *Monell* claims is favorable to all parties and represents a sensible exercise of the Court's inherent power to control its docket. *Krocka*, 203 F.3d at 516. Indeed, in at least some cases brought by Plaintiffs' counsel involving similar *Monell* claims, other courts in this district have opted to stay and bifurcate those claims well in advance of trial because of the significant risk of unfair prejudice and judicial economy. See, *e.g.*, *Blassingame v. City of Chicago*, 2023 WL 239363 at * 3, No. 19 C 7287, (N.D.Ill. March 7, 2023)(Kness, J.)(holding it possible, perhaps probable, that a jury would hold the defendant officers impermissibly accountable by association when presented with six years of excessive force complaints against other children.);

---

[5] The Seventh Amendment is not at issue in this situation.
[6] *Cruz v. City of Chicago*, No. 08 C 2087, 2008 U.S. Dist. LEXIS 101743, at *3 (N.D. Ill. Dec. 16, 2008).
[7] Defendants submit that this could easily be done via special interrogatory.

*Lyons v. City of Chicago*, 2023 WL 2390364 at , No. 20 C 3412 (N.D.Ill. March 7, 2023)(Kness, J.); *Smith v. City of Chicago*, No. 21 C 890 at Doc. 87 (N.D.Ill. July 21, 2022)(Blakey, J.) *James v. City of Chicago*, No. 21 C 6750 at Doc. 48, 53 (N.D.Ill. May 25, 2022)(Guzman, J.); *Toni Tate v. City of Chicago*, 2021 WL 440982 at * 3, No. 19 C 7506 (N.D.Ill. Sept. 27, 2021)(Durkin, J.). Their sound reasoning should be applied to the case at bar for the reasons described at length below.

### I. Defendants Would Face Insurmountable Prejudice Should the *Monell* Claims Not Be Bifurcated For Trial.

"Bifurcation may be proper solely because a joint trial would be prejudicial to the moving party." *Bradford*, 2019 U.S. Dist. LEXIS 178832, at *8. *See also Washington*, 2023 U.S. Dist. LEXIS 6589, at *18-20 (finding that risk of unfair prejudice to defendants warranted bifurcation); *Awalt*, 75 F. Supp. 3d at 782 (bifurcating *Monell* claim "to avoid an undue risk of unfair prejudice" despite that "the possibility of *Monell* liability will not be foreclosed if the jury finds there is no individual liability"); *Chlopek*, 499 F.3d at 700 (bifurcation is appropriate *either* to prevent prejudice *or* promote judicial economy) (emphasis added); *Owens v. Ellison*, No. 13 C 7568, Dkt. 76 (N.D. Ill. Mar. 7, 2017) (Dow, J.) (bifurcating *Monell* claim for trial as *Monell* evidence may prejudice defendants and could cause jury confusion); Fed. R. Civ, P. 42(b) (avoiding prejudice is alone a proper basis for bifurcation).

Bifurcation is necessary here in order to avoid the risk of unfair prejudice to Defendant Officers. As set forth above, Plaintiffs' *Monell* claims consist of their allegation that the officers' alleged use of excessive force was directly and proximately caused by: (1) a pattern and practice of using unnecessary or excessive force against children (ages 0-14); (2) a systemic failure to investigate and discipline;(3) a failure to train; and (4) a code of silence. Evidence pertaining to these *Monell* claims would concern testimony from city officials and private citizens, and involve conduct spanning years that is wholly unrelated to any alleged misconduct during the November 7, 2017 execution of the search warrant at Plaintiffs' residence. Plaintiffs would almost certainly present numerous allegations of wrongdoing against children, whether in the form of live witnesses who claim they themselves

were victims, documents investigating allegations of victims, and expert testimony purportedly analyzing such allegations and more.

Such evidence is highly inflammatory and would be far more wide-ranging than evidence allowed in for any other purpose (if at all), even under Federal Rule of Evidence 404(b). *See, e.g., Bradford*, 2019 U.S. Dist. LEXIS 178832, at *9-10 (reasoning that "the possibility of similar evidence regarding non-parties has been found to warrant bifurcation" and finding that "to the extent that the evidence offered in any combined trial were to concern other acts of the individual Defendants themselves, that, too, is problematic"). It is inevitable that in such situations, the jury will believe that it should find Defendant Officers liable by association alone, a concept that "is repugnant to our notion of elemental justice and fair play." *Dollard v. Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019). The introduction of evidence relating to the wide-ranging allegations of Plaintiffs' *Monell* claims would clearly prejudice Defendant Officers and undermine their right to a fair trial. *See, e.g., Veal v. Kachiroubas*, No. 12 C 8342, 2014 U.S. Dist. LEXIS 10599, at *20 (N.D. Ill. Jan. 29, 2014) (Lefkow, J.) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case.").

There is "a real 'danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s].'" *Ojeda-Beltran*, 2008 U.S. Dist. LEXIS 54116, at *7-8 (quoting *Ismail v. Cohen*, 706 F. Supp. 243, 252 (S.D.N.Y.1989)); *Owens v. Ellison*, No. 13 C 7568, Dkt. 76 (N.D. Ill. Mar. 7, 2017) (Dow, J.) ("[S]ome of the evidence that may be admissible in a trial of the *Monell* claim, including a DOJ report and documents from other cases (some of which do not even involve the individual Defendants in this case) may be prejudicial to Defendants and could create a risk of juror confusion

7

as well."). Indeed, it would include otherwise inadmissible propensity evidence barred by Federal Rules of Evidence 403 and 404(b).

The unfairness is exponential in this case considering that the BWC footage has established only two officers even conceivably pointed guns at anyone purposefully: Sgt. Egan and Officer Capello. Each other officer had BWC establishing that they in fact did not target anyone with a gun. Thus there is an even greater problem of unfair prejudice: the trial of the five defendant officers who categorically did not point their guns at anyone would be tainted with six years' of evidence of alleged wrongdoing. While Officer Cappello and Sgt. Egan will certainly be prejudiced should *Monell* evidence regarding other incidents involving alleged excessive force against minors, the prejudice is even greater to the five Defendant Officers who indisputably did not point their weapons at Plaintiffs. Despite there being no allegations that they used any force whatsoever against the minor Plaintiffs, they would be forced to defend themselves in a lengthy trial in which most of the evidence and arguments pertain to the use of force and claims of excessive force against children. This would run afoul of the long-held rule that, for § 1983 claims, defendants are liable "for their own misdeeds, . . . not anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Defendants would thus be robbed of a fair trial should the *Monell* claims not be bifurcated. This is especially true given that even the evidence against Officer Cappello and Sgt. Egan relating to their alleged gun-pointing is slim to none.[8] The lack of evidence in this case exacerbates the prejudice other instances of alleged gun pointing by other officers on different teams would bring. It is overwhelmingly unfair.

There is a very real risk that *Monell*-related evidence will cause the jury to render a verdict based on the alleged history of misconduct in the CPD rather than on the facts of the incident

---

[8] Indeed, Jack Mendez himself has stated multiple times that officers did not point a gun at him. *See* Deposition of Jack Mendez, attached to Defendants' Statement of Undisputed Material Facts, Dkt. No. 436, as Exhibit 19, at 65:22-23; Video Clip of CBS's Interview of Jack Mendez, attached as Exhibit 20 to Defendants' Statement of Undisputed Material Facts, Dkt. No. 436).

underlying this case. *See Carthans*, 2017 U.S. Dist. LEXIS 233680, at \*9 (bifurcating *Monell* claim for trial in part because "the introduction of evidence related to acts of misconduct by non-party officers, police policies and procedures, and investigative reports discussing the Harvey Police Department might unfairly color the issue of defendant detective's liability"); *Fuery v. City of Chicago*, No. 07 C 5428, 2015 U.S. Dist. LEXIS 18938, at \*11-12 (N.D. Ill. 2015) (Ellis, J.) ("*Monell* evidence will draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago. Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion."); *Tanner v. City of Waukegan*, No. 10 C 1645, 2011 U.S. Dist. LEXIS 16025, at \*29-30 (N.D. Ill. 2011) (Keys, J.) (reasoning that plaintiff sought misconduct and disciplinary evidence concerning non-party police officers over a seven-year-period, as well as state and federal jury verdicts against officers over a ten-year span" and that if admitted against the City, such evidence could prejudice the individual defendants' ability to distinguish their own actions from those of other non-party officers."); *Lopez v. City of Chicago*, No. 01 C 1823, 2002 U.S. Dist. LEXIS 3458, at \*6 (N.D. Ill. Mar. 1, 2002) (Darrah, J.) ("Without bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."); *Jones v. City of Chicago*, No. 98 C 5418, 1999 U.S. Dist. LEXIS 3358, at \*9-10 (N.D. Ill. March 10, 1999) (Kocoras, J.) (finding that interrogatories seeking information regarding various acts of alleged police misconduct and excessive force committed by numerous non-party officers over past twelve years justified bifurcation).

Plaintiff may argue that any prejudice could be cured by limiting instructions. Not so. The use of limiting jury instructions will not mitigate the risk of unfair prejudice to Defendant Officers in this case. Although "limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow

9

them," this presumption is rebuttable. *Sopron v. Cassidy*, Nos. 19 C 8254, 21 C 5525, 22 C 320, 2023 U.S. Dist. LEXIS 170292, at *17-18, 2023 WL 6213713 at *4 (N.D. Ill. Sep. 22, 2023) (Kness, J.). When bifurcating similar *Monell* claims in *Lyons* and *Blassingame*, the Court found that "[b]ecause of the potentially inflammatory evidence regarding excessive force against minors and the nuanced difference between *Monell* and *respondeat superior* liability, th[ese] case[s] present[] one of those perhaps-rare occasions where, in the Court's view, limiting instructions are insufficient to ameliorate the potential prejudice to Defendants." *Blassingame*, 2023 U.S. Dist. LEXIS 37659, at *11-12; 2023 WL 2390363 at * 4; *Lyons*, 2023 U.S. Dist. LEXIS 37660; 2023 WL 2390364 at * 3, at *12. *See also Sopron*, 2023 U.S. Dist. LEXIS 170292, at *17 (same). The Court's reasoning in *Lyons* and *Blassingame* is applicable here given that, like the *Monell* claims in those cases, the *Monell* claims here involve evidence of claims that non-party Officers used excessive force against minors.

Similarly, there also runs a risk of prejudice against the City if the claims were to be tried in a single trial. *Monell* provides Plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality vicariously liable or liable under a *respondeat superior* theory. *See, e.g., EG Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007). However, a joint trial makes it much more likely that jurors will misunderstand *Monell* liability and treat it as *respondeat superior*. This point is "compelling" and "counsels in favor of bifurcation." *Bradford*, 2019 WL 5208852, at *4.

Conversely, a bifurcation and stay of the *Monell* claims will not cause any prejudice to Plaintiffs because it does not bar Plaintiffs from asserting the *Monell* claims should they prevail in the claims against the individual defendants. *Castillo v. City of Chicago,* No. 11 C 7359, 2012 U.S. Dist. LEXIS 66591, at *19 (N.D. Ill. 2012) (Conlon, J.). If there is anything for Plaintiffs to pursue following the resolution of individual defendant claims, Plaintiffs are free to do so; bifurcation is not the same as a dismissal. *Carr,* 908 F. Supp. 2d at 935. Moreover, since the City will accept liability under *Monell*, the evidence

10

would be wholly extraneous and would only serve to dominate and likely triple the length of the trial, courts have recognized that these burdens and delays prejudice *plaintiffs* as well as defendants. *See, e.g., Almaraz v. Haleas,* 602 F. Supp. 2d 920, 925-26 (N.D. Ill. 2008). Moreover, it must be noted that any purported interest in non-monetary value has already been addressed by updated policies, the Consent Decree, and the Peter Mendez Act. Accordingly, the likelihood of unfair prejudice to each party ways in favor of bifurcation.

> **II.** **Efficiency Weighs in Favor of Bifurcation because Plaintiffs Need to Prove an Underlying Constitutional Violation in order to Succeed on their *Monell* Claims.**

Generally, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See, e.g., City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). This is true even here where Plaintiffs have not pled an excessive force claim against the individual Defendant Officers. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015). To succeed on their *Monell* claims, Plaintiffs need to first prove that Officer Cappello and Sgt. Egan used excessive force against the minor Plaintiffs.[9] The lengthy *Monell* trial Plaintiffs seek will not be necessary if Plaintiffs cannot prove this underlying constitutional violation. *See, e.g., E. Porter Cty. Sch. Corp.*, 799 F.3d at 800 ("municipality cannot be found liable under *Monell* when there is no underlying constitutional violation by a municipal employee. . . .").

Plaintiffs may argue that this case falls into an exception carved out by *Thomas v. Cook County Sheriff's Department,* 604 F.3d 293, 305 (7th Cir. 2010), which would be without merit. *Thomas* found that a municipality can be held liable even if there is no liable individual, so long as such a finding would not create an inconsistent verdict. Given the nature of Plaintiffs' claims in this case, such a scenario is impossible here. The entire claim is predicated upon the actual conduct of the officers at issue. *See, e.g., Claxton v. City of Chicago,* No. 14 C 10076, 2015 U.S. Dist. LEXIS 119664, at *3 (N.D.

---

[9] Defendants submit that the evidence does not support such a claim, and have filed for summary judgment on this issue.

11

Ill. Sept. 9, 2015) (Ellis, J.) ("The alleged harm to Plaintiffs was not caused independently by these alleged City policies but rather through the Officer Defendants' actions, . . . ."); *Fuery*, 2015 U.S. Dist. LEXIS 18938, at *6 ("unlike in *Thomas*, the alleged harm to Plaintiffs was not caused independently by these alleged City policies but rather through [defendant officer]'s actions. . . ."); *Veal*, 2014 U.S. Dist. LEXIS 10599, at *11 ("[E]ven if the absence of policy may be the source of the violation of civil rights, **there is no injury to [Plaintiff] without officer misconduct**.") (emphasis added); *Taylor v. Kachiroubas*, Nos. 12 C 8321, 12 C 8349, 2013 U.S. Dist. LEXIS 162806, at *13-14 (N.D. Ill. Nov. 15, 2013) (Gottschall, J.) ("Here, however, the actions of the individual officers in collecting and fabricating evidence against [plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' **exerted harm through those actions, not independently of them**.") (emphasis added).

Courts in this district have repeatedly held that excessive force *Monell* claims require proof of an underlying constitutional violation. *See, e.g., Carr*, 908 F. Supp. 2d at 930 (excessive force *Monell* claims require finding of underlying constitutional violation); *Scott v. Chicago Police Dep't*, No. 14 C 6657, 2015 U.S. Dist. LEXIS 10158, at *9 (N.D. Ill. Jan. 29, 2015), *aff'd sub nom. Scott v. City of Chicago*, 619 Fed. Appx. 548 (7th Cir. 2015) ("A plaintiff cannot maintain a *Monell* claim without establishing an underlying constitutional violation."). *See also See Blassingame*, 2023 U.S. Dist. LEXIS 37659, at *13-15; *Lyons*, 2023 U.S. Dist. LEXIS 37660, at *14-16.

Moreover, whether a municipal defendant may be found liable in the absence of individual officer liability, is irrelevant if there are other compelling reasons to bifurcate. *Awalt*, 75 F. Supp 3d. at 781–82 (bifurcating trial due to possibility of unfair prejudice and explaining that the fact that *Monell* liability may not be foreclosed following the trial on individual liability was "not the salient issue"). One compelling reason to bifurcate is that the probative value of the *Monell* evidence needed to establish municipal liability is outweighed by the risk of unfair prejudice to any individual defendants, who may only be responsible for a particular violation relating exclusively to plaintiff. *Id.*

In such a case, "Rule 42(b) provides for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants." *Houskins*, 549 F.3d at 495.

Accordingly, since Plaintiffs must prove a constitutional violation, judicial economy supports bifurcation because a single trial on the relatively simple issues against Defendant Officers is all that is needed here. The issue of whether or not Officer Capello or Sergeant Egan committed excessive force would be proven (or not proven) using the exact same witnesses as the claims against the Defendant Officers and could be resolved via special interrogatory at the end of trial. This is especially true as Plaintiffs' state law assault claim consists of allegations that Officers "point[ed] guns at close range at plaintiffs," and thus the evidence needed to try the excessive force claim mirrors that of the evidence relating to the assault claim. (Doc. 125, ¶ 181). A jury instruction on the Fourth Amendment's reasonableness standard coupled a special interrogatory is more than sufficient.

Unless the *Monell* claims are stayed and bifurcated for trial, the trial will likely sprawl out of control. A single trial of all claims against all Defendants will require the parties to simultaneously put on separate cases based on completely different facts and legal theories. The claims against Defendant Officers focus on obtaining and executing one search warrant. In contrast, Plaintiffs' *Monell* claims implicate countless non-party police officers, supervisors, and command personnel spanning six years and multiple different areas of the police policy (use of force, training, and accountability). Municipal liability will depend on a jury sorting through this massive amount of evidence to determine whether Plaintiffs have proven each element of their *Monell* claims.

Moreover, keeping the *Monell* claims in the trial will require the Court to contend with extensive motions *in limine* as to those claims. Defendants believe the witnesses required for the underlying case would be the four plaintiffs, seven defendants, one or two of plaintiff's treaters and a psychological expert, and perhaps limited testimony from each side's police practices expert. Most of these witnesses would be testifying about an event less than 15 minutes long that is almost completely

13

captured on bodyworn camera. Defendants estimate presenting these witnesses would take approximately 7 days of court time. By contrast, adding just the *Monell* witnesses who were deposed would double or triple that time. These witnesses would be introducing whole new sets of facts and concepts to the jury that will take extra time to explain. Should Plaintiffs be allowed to present witnesses who claim they/their children were victims of excessive force, Defendants would be compelled to rebut those claims. These mini-trials could easily quadruple the length of the trial.

As discussed above, a *Monell* trial is unnecessary because if Plaintiffs cannot establish that Defendants Officer Cappello and Sgt. Egan committed excessive force against the minor Plaintiffs, then their *Monell* claims fail at the outset. And if they can establish such, they will be compensated by the City. The City does not dispute that Defendant Officers were acting within the scope of their employment at all relevant times during their encounter with Plaintiffs (Doc. 1) nor its duty to indemnify them for any compensatory damages awarded (735 ILCS 10/9-102). If Plaintiffs do prevail in establishing such a constitutional violation, the City has previously represented that it will consent to the limited entry of a judgment against it for the amount of damages caused by the violation, plus reasonable attorneys' fees, without requiring Plaintiffs to prove the elements of § 1983 municipal liability. *See* Limited Consent to Entry of Judgment Against Defendant City of Chicago, attached as Exhibit B to Defendants' Reply to the initial Motion to Bifurcate and Exhibit F to Defendants' Renewed Motion to Bifurcate, at ¶¶ 4-6. *See* Docket Nos. 68-2 and 211-6. The City will submit an updated *Limited Consent* and proposed special interrogatory once it is clear which aspects of the claims are proceeding at trial. Given the *Limited Consent*, "disposition of the individual claims will either legally or practically end the litigation. . . . If the plaintiff prevails against the officer[s] on his § 1983 claim[s], he is likely not to want or need to proceed any further . . . ." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Thus, the *Limited Consent* fulfills the goal to ensure full recovery of compensatory damages if Plaintiffs are successful.

In *Horton v. City of Chicago*, 2016 WL 316878 (N.D. Ill. 2016), the court found that the trial "would be longer and more legally and factually complex if the *Monell* claim [was] not bifurcated." *Id.* at *4. The *Horton* court further noted that "[a]lthough the parties have not estimated the number of additional trial days that would be needed for the *Monell* claim, it undoubtedly would take a significant amount of time to present evidence concerning the City policies and practices that allegedly led to [defendant officers] violating [plaintiff's] constitutional rights." *Id.* As a result, the court concluded that "[o]n balance … bifurcation of the *Monell* claim for discovery and trial would 'promote judicial economy.'" *Id.* (citing *Chlopek*, 499 F.3d at 700). Lastly, and notably, should Plaintiffs prevail on their *Monell* claim, their damages would be unaffected because they are not entitled to recover any additional compensatory damages from the City. *Elrod v. City of Chicago*, Nos. 06 C 2505, 07 C 203, 2007 U.S. Dist. LEXIS 80941, at *8-9 (N.D. Ill. Nov. 1, 2007) (Brown, J.). *See, e.g. Almaraz,* 602 F. Supp. 2d at 926 ("*Monell* would only be an alternative means of holding the City liable for the false arrest and **would not increase or decrease the damages**—nominal or compensatory—that plaintiff is entitled to receive for his injuries") (emphasis added). In short, the *Limited Consent* allows Plaintiffs to recover the entire monetary compensation in the event they prove a constitutional violation while sparing the need to conduct a lengthy trial on the *Monell* claims. Judicial economy thus favors bifurcation.

## CONCLUSION

In summary, trying the *Monell* claims along with the claims against the Defendant Officers would cause undue prejudice to the Defendants and create a long, unwieldly trial. Therefore, both prejudice and judicial economy weigh in favor of bifurcation, and this Court should grant Defendants' motion.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court bifurcate and stay Plaintiffs' *Monell* claim, or for any such other relief as this Court deems just.

Respectfully submitted,

CITY OF CHICAGO,

By: /s/ *Marion C. Moore*
Chief Assistant Corporation Counsel

Marion C. Moore, Chief Assistant Corporation Counsel
Raoul Vertick Mowatt, Assistant Corporation Counsel Supervisor
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
312.744.5170
Atty No. 6302566
**Attorneys for Defendant City**

DEFENDANT OFFICERS

By: /s/ *Larry S. Kowalczyk*
Assistant Corporation Counsel

Larry S. Kowalczyk, Special Assistant Corporation Counsel
Megan K. Monaghan, Special Assistant Corporation Counsel
Mohan Groble Scolaro P.C.
55 W. Monroe, Suite 1600
Chicago, IL 60603; (312) 422-9999
**Attorneys for Defendant Officers**