# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HESTOR MENDEZ and GILBERT MENDEZ for themselves and on behalf of their minor children, PETER MENDEZ AND JACK MENDEZ, | |
| Plaintiffs, | No. 18-cv-5560 |
| v. | Judge Franklin U. Valderrama |
| THE CITY OF CHICAGO, *et al.*, | |
| Defendants. | |

## ORDER[1]

On the evening of November 7, 2017, Chicago Police Officers executed a search pursuant to a warrant at the apartment of Hestor Mendez and Gilbert Mendez (together, the Mendezes). The target of the warrant, however, actually lived in the upstairs apartment. The Mendezes, individually and on behalf of their minor children Peter and Jack (collectively, Plaintiffs), sued the City of Chicago (the City), several Chicago Police Officers—Officers Cappello, Donnelly, Hernandez, Guzman, and Sehner—who procured and/or executed the search warrant (Defendant Officers), and

---

[1]Portions of the parties' briefs were filed under seal. Because this Order may contain privileged information that was submitted to the Court under seal, the Court will issue its Order under seal so the parties may meet and confer with one another about proposed redactions. The parties are to file a joint position statement by March 3, 2025, explaining what (if any) redactions are needed in the text of the Order, and why (bearing in mind the strict standard against secret filings, *see generally Mitze v. Saul*, 968 F.3d 689 (7th Cir. 2020)). That position statement may be filed under seal. After considering the proposed redactions, the Court will unseal this Order (if no redactions are requested/warranted) or issue a public, redacted version of the Order.

Sergeant Egan[2] and Lieutenant Dari the supervisors who approved the warrant (collectively, Defendants) under 42 U.S.C § 1983 and under state law. R. 125, Fourth Am. Compl.[3] Defendants' motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment are before the Court. R. 542, Defs.' Mot. Summ. J.; R. 544, Pls.' Cx-Mot. Summ. J. In this Order, the Court addresses the parties' cross motions as to Counts II and III as they relate to the procurement, not the execution, of the search warrant. The Court will issue a subsequent order(s) addressing the remaining Counts. For the reasons stated below, the Court grants Defendants' motion for summary judgment as to Counts II and III for unlawful search based on an invalid search warrant and for supervisory liability related to the unlawful search.

## Background[4]

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937

---

[2]Sgt. Egan also was present during the execution of the warrant.

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

[4]This background is derived from the parties' Local Rule 56.1 Statements of Material Facts, and the responses and replies to those statements. *See* R. 436, Defendants' Statement of Facts (DSOF); R. 457 at 1–64, Plaintiffs' Response to Defendants' Statement of Facts (Pls.' Resp. DSOF); R. 457 at 64–111 at 13–18, Plaintiffs' Statement of Additional Facts (PSOAF); R. 488, Defendants' Reply to their Statement of Facts (Defs.' Reply DSOF); R. 489, Defendants' Response to Plaintiffs' Statement of Additional Facts (Defs.' Resp. PSOAF); R. 574 at 1–176, Pls.' Reply to Plaintiffs' Statement of Additional Facts (Pls.' Reply PSOAF); R. 574 at 176–77, Plaintiffs' Supplemental Statement of Additional Fact (Pls.' Suppl. PSOAF); R. 525, Defendants' Response to Plaintiffs' Supplemental Statement of Additional Fact (Defs.' Resp. Pls.' Suppl. PSOAF); R. 531, Plaintiffs' Reply to Plaintiffs' Supplemental Statement of Additional Fact (Pls.' Reply Pls.' Suppl. PSOAF).

(7th Cir. 2003). So, when the Court evaluates Defendants' motion for summary judgment, Plaintiffs gets the benefit of reasonable inferences; conversely, when evaluating Plaintiffs' partial motion, the Court gives Defendants the benefit of the doubt. On summary judgment, the Court assumes the truth of the facts presented by the parties, but does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (cleaned up); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence.

Before turning to the facts themselves, the Court first addresses Defendants' objection, raised in response to nearly all of Plaintiffs' statements of additional fact, that the paragraphs in Plaintiffs' Statement of Additional Facts contain multiple facts. As Plaintiffs point out in their reply in support of their additional facts, many courts within this District have rejected similar objections. Pls.' Reply PSOAF ¶ 1 (citing, *inter alia*, *Banks v. Illinois Cent. R.R. Co.*, 2019 WL 3080923, at *3 (N.D. Ill. July 15, 2019) ("Nothing in Rule 56.1 instructs parties to include only one fact per paragraph"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) ("The court does not count facts or sentences mechanically . . . .")). So too does this Court overrule Defendants' objections. Because the Court rejects Defendants' arguments based on the inclusion of multiple facts per paragraph, the Court accordingly does not

consider Plaintiffs' alternative argument to strike Defendants' Statements of Fact that contain multiple facts. *See* R. 468, Pl. Resp./Cx-Memo. at 1 n.1.

On November 6, 2017, following a car chase by a marked police car that resulted in a crash, Sgt. Egan and Officer Sehner arrested a man after finding 50-to-80, 2-gram bags of heroin in his car, charging him with multiple charges, including eluding the police, resisting arrest, and possession with intent to distribute. Pls.' Reply PSOAF ¶ 5; Defs.' Reply DSOF ¶ 5. The arrestee (John Doe) was a convicted felon who had numerous convictions for possession and distribution of large quantities of narcotics, and also had a pending criminal case as of the date of his arrest. Pls.' Reply PSOAF ¶ 5. While being processed on the same day, John Doe told Sgt. Egan and Officer Cappello that he received the drugs from Curtis Roberts, for whom he had been selling drugs for a year, and provided the officers other information about Roberts and his girlfriend Patricka Cavazos. *Id.* ¶ 6; Defs.' Reply DSOF ¶ 6. John Doe referred to Roberts as his cousin. Defs.' Reply DSOF ¶ 19. The officers knew Roberts to be an individual heavily involved in dealing narcotics in the 11th District. Defs.' Reply DSOF ¶ 6.

Among other things, John Doe told Officers Cappello and Donnelly that he had been in the second-floor apartment at 3557 S. Damen on November 4, 2017 and had taken a gym bag from Roberts and Cavazos' bedroom that contained four bags of suspect heroin and cocaine. Defs.' Reply DSOF ¶ 8. He also said that he had been in that apartment on five separate prior occasions during which he also saw drugs and money. *Id.* He told them that Roberts was in possession of "suspect heroin and

4

cocaine." *Id.* ¶ 9. John Doe also gave specific instructions as to how to get to the Roberts/Cavazos apartment: he told them that to reach the target residence, the officers were to make entry into the common area/foyer, open another door, and then go up the flight of stairs and that the target residence would be the first door on the right-hand side. Defs.' Reply DSOF ¶ 10. Sgt. Egan re-interviewed John Doe and received the same information that John Doe told Cappello. *Id.* ¶ 11. John Doe had never served as an informant before, and neither Cappello, nor Sgt. Egan nor the Chicago Police Department (CPD) had ever worked with him. Pls.' Reply PSOAF ¶ 6.

This was the first search warrant for which Officer Cappello was the affiant officer, so Sgt. Egan supervised his investigation by walking him through the process of what was needed for the search warrant, advising him to verify John Doe's information, re-interviewing John Doe, assisting him with having the Cook County State's Attorney's Office felony review division and the judge review and approve the search warrant. Defs.' Reply DSOF ¶ 7.

Officer Cappello entered the names and physical descriptions of John Doe into two law enforcement databases, LEADS and I-CLEAR, to look for (a) photos of the target(s) (I-CLEAR) to show John Doe, (b) any associated addresses (LEADS) and (c) any previous arrest addresses (I-CLEAR). Pls.' Reply PSOAF ¶ 8. Neither LEADS nor I-CLEAR showed that Roberts or Cavazos lived at 3557 S. Damen Avenue. Defs.' Resp. PSOAF ¶ 9; Defs.' Reply DSOF ¶ 13. In fact, the I-CLEAR database showed different Chicago addresses for Roberts and Cavazos. Pls.' Reply PSOAF ¶ 9.

John Doe identified Roberts and Cavazos from their booking photos and the I-CLEAR photos and identified the second-floor residence from photos of the residence and from a video of the second-floor apartment that was obtained from a real estate website. Defs.' Reply DSOF ¶ 16; Defs.' Resp. PSAOF ¶ 8. Per Sgt. Egan's instructions, Officers Cappello and Donnelly drove John Doe past the target location twice during which he pointed out the second floor target. DSOF ¶ 18. This drive by took about 3–4 minutes and took place when it was dark outside. Pls.' Resp. DSOF ¶ 18; Pls.' Reply PSOAF ¶ 8.

None of the Defendant Officers or Sgt. Egan conducted additional surveillance (with the exception of Sgt. Egan as described below), searched other databases for information about Roberts or Cavazos, or used subpoenas to obtain additional information. PSOAF ¶¶ 9–12; Pls.' Reply PSOAF ¶ 20. Nor did Sgt. Egan suggest that Officer Cappello take additional investigative steps, even after he learned that LEADS and I-CLEAR failed to verify Roberts and Cavazos' address at the target residence. Pls.' Reply PSOAF ¶ 18.

Officer Capello wrote the complaint for search warrant and search warrant, with assistance from Sgt. Egan. DSOF ¶ 20; Pls.' Resp. DSOF ¶ 20; Pls.' Reply PSAOF ¶ 15. They presented the documents to Assistant State's Attorney (ASA) Glen Runk of Felony Review for review, but ASA Runk did not investigate or verify any of the facts, as it was not his job to do so. DSOF ¶ 20; Pls.' Resp. DSOF ¶ 20; Pls.' Reply PSOAF ¶ 21. While Officer Cappello was meeting with Felony Review, Sgt. Egan conducted surveillance of 3557 S. Damen for about 15–20 minutes to see who was

coming and going; he never exited the car. DSOF ¶ 22; Pls.' Resp. DSOF ¶ 22. ASA Runk ultimately approved the search warrant after speaking to Officer Capello and Sgt. Egan. DSOF ¶ 23.

On November 7, 2017, Officers Donnelly and Guzman took John Doe to the courthouse, where Officer Cappello and Sgt. Egan presented John Doe to Cook County Circuit Court Judge Burns. Defs.' Reply DSOF ¶ 24. Judge Burns approved the search warrant after asking questions and hearing sworn testimony from John Doe in the presence of Sgt. Egan, Officer Cappello, and Officer Hernandez, regarding John Doe's arrest the night before, his criminal background, how many times he had sold drugs for the target, and if he had been incarcerated. DSOF ¶ 25; *see also* Defs.' Resp. PSOAF ¶ 22. Judge Burns did not ask Officer Cappello any questions about the investigation. Pls.' Reply PSOAF ¶ 22. Neither Officer Cappello nor John Doe presented Judge Burns with any information outside of the complaint for search warrant (which included John Doe's criminal history). *Id.* The hearing took approximately 5 minutes. *Id.*

The complaint for search warrant did not state that that LEADS and I-CLEAR did not confirm the address that John Doe had given Defendants, nor that Officer Cappello orally told John Doe that he would "go to bat for him" with the State's Attorney to get lenient charges and/or sentencing. Pls.' Reply PSAOF ¶ 23.

Lt. Dari reviewed and approved the complaint for search warrant and search warrant on November 7, 2017, after they were already approved by ASA Runk and Judge Burns. Defs.' Reply DSOF ¶ 26. Lt. Dari testified that he believed that there

7

was sufficient probable cause to search the second-floor apartment at 3557 S. Damen. DSOF ¶ 26.

On November 7, 2017, Defendants executed the search warrant for the second-floor apartment at 3557 S. Damen, which is where Plaintiffs live. Pls.' Reply PSAOF ¶ 2. Roberts and Cavazos actually lived in the *third-floor* apartment at 3557 S. Damen. *Id.* Defendants did not find any cocaine or heroin in Plaintiffs' apartment, did not recover any contraband, and did not arrest, charge or cite any Plaintiff. *Id.*

Approximately four and a half five years after the raid, on January 27, 2022, the City of Chicago's Civilian Office of Police Accountability (COPA) completed an internal affairs investigative report which sustained multiple allegations of misconduct against Defendants in relation to the procurement and execution of the search warrant, including that: (1) Cappello failed to adequately verify and corroborate information provided by John Doe; (2) Sgt. Egan failed to ensure that Cappello completed a thorough search warrant investigation; and (3) Lt. Dari failed to ensure that Cappello verified and corroborated John Doe's information by an independent investigation prior to approving the search warrant. Pls.' Suppl. SOAF ¶ 141.

Plaintiffs sued the City, Chicago Police Officers—Cappello, Donnelly, Hernandez, Guzman, Sehner, Sgt. Egan and Lt. Dari under 42 U.S.C § 1983 and under state law. Fourth Am. Compl. Specifically, Plaintiffs assert the following Section 1983 claims: (1) a *Monell* policy claim against the City related to Defendants' alleged use of excessive force while executing the search warrant (Peter and Jack

Mendez only) (Count I); (2) unlawful search against Defendants based on an invalid search warrant and failure to "knock and announce" (Count II); (3) supervisory liability against Sgt. Egan and Lt. Dari based on their supervision of the procurement of the warrant (Count III); (4) unlawful search against Defendants based on their warrantless entry and failure to retreat (Count IV); and (5) false arrest and false imprisonment against Defendants (Count V). Plaintiffs bring the following state-law claims against the City: (1) assault (Count VI); (2) battery (Gilbert Mendez only) (Count VII); (3) false arrest and false imprisonment (Count VIII); (4) intentional infliction of emotional distress[5] (Peter and Jack Mendez only) (Count IX); and (5) trespass (Count X). Finally, Plaintiffs bring claims for *respondeat superior* and indemnification against the City (Counts XI and XII).

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial."

---

[5]The Fourth Amended Complaint also alleged a claim for negligent infliction of emotional distress, Fourth Am. Compl. ¶¶ 202–210), but Plaintiffs voluntarily dismissed that claim in their Cross Motion/Response. Pls.' Resp./Cx-Memo. at 52 n.54.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up).[6] In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

On cross-motions for summary judgment, the Court "view[s] the facts and draw[s] reasonable inferences in favor of the party against whom the motion at issue was made." *Woodring v. Jackson Cnty.*, 986 F.3d 979, 984 (7th Cir. 2020). The existence of cross-motions for summary judgment, however, does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs, L.L.C. v. Int'l Union, Local Union*, 150, 335 F.3d 643, 648 (7th Cir. 2003). As the Seventh Circuit has explained, this is due to the parties' differing burdens of proof. *Id*. Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of

---

[6]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). On the other hand, where a plaintiff must prove all elements of a cause of action in order to succeed at trial, a defendant prevails on summary judgment if it shows that the plaintiff cannot prevail on any one of the elements. *See, e.g.*, *Domantas v. Menard, Inc.*, 2022 WL 204374, at *3 (N.D. Ill. Jan. 24, 2022).

## Analysis

As stated above, the Court addresses in this Order Plaintiffs' Fourth Amendment claims related to the validity of the search warrant. Specifically, in Count II Plaintiffs allege that Defendants "unreasonably obtained or approved a search warrant for plaintiffs' apartment, the wrong apartment, a fact which invalidated the warrant from the start, prior to execution."[7] Fourth Am. Compl. ¶ 139. In Count III, Plaintiffs allege that Sgt. Egan[8] failed to properly supervise Officer Cappello in his procurement of the search warrant, which led to the violation

---

[7]Count II also alleges that Defendants "failed to 'knock-and-announce'" in circumstances where it was required. Fourth Am. Compl. ¶ 140. The Court will address that aspect of the claim in a subsequent Order.

[8]The Fourth Amended Complaint alleges a supervisory liability claim against Sgt. Egan. *See* Fourth Am. Compl. ¶¶ 154–161. In their sur-response/cross-reply, Plaintiffs request that the Court construe Count III to be against Lt. Dari, or alternately indicate that they will seek leave to amend the complaint prior to trial to add Lt. Dari to Count III. R. 575, Pls.' Sur-Resp./Cx-Reply at 49 & n.43. The Court addresses Plaintiffs' request below.

of Plaintiffs' Fourth Amendment rights. The parties have cross-moved for summary judgment on both counts.

## I. Validity of the Search Warrant

Defendants argue they are entitled to summary judgment on this claim because the search warrant was supported by probable cause, and in the alternative, they are shielded by qualified immunity. R. 438, Defs.' Memo. at 9, 18. Plaintiffs counter that they are entitled to summary judgment because the search warrant was based on unreliable, uncorroborated evidence, and Defendants concealed from the issuing judge key facts that undermined probable cause. Pls.' Resp./Cx-Memo. at 33. From Plaintiffs' point of view, no reasonable officer would have believed that probable cause existed, and therefore qualified immunity is inappropriate.

"The Fourth Amendment requires that a warrant be supported by probable cause." *Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009). "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). When a judge evaluates the warrant affidavit and authorizes an arrest, the court "presume[s] the validity of [the] warrant and the information offered to support it." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (cleaned up). The court should give "great difference" to the judge's probable cause finding and "uphold that determination so long as there is a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Edwards v. Jolliff-Blake*, 907 F.3d 1052,

12

1057 (7th Cir. 2018) (cleaned up). That presumption can yield, however, if the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Johnson*, 53 F.4th at 1068–69 (cleaned up). In those circumstances, "even a facially valid arrest warrant does not shield otherwise unreasonable conduct." *Id.* at 1069 (cleaned up).

"Where, as here, the affidavit supporting a search warrant relies on information supplied by an informant, the analysis examines five primary factors (the *Glover* factors), none of which is determinative by itself: 'the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate.'" *Edwards*, 907 F.3d at 1057 (quoting *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014)). Because no one factor is determinative, "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Peck*, 317 at 756.

A warrant's presumption of validity also may give way "on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determination that probable cause existed." *Johnson*, 53 F.4th at 1069. This includes when an "officer intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* (cleaned up). But even these exceptions are "narrowly drawn by design" because

a court should accord "great deference to the issuing judge's determination of probable cause." *Id.* (cleaned up).

Plaintiffs contend that Defendants acted in reckless disregard for the truth by relying solely on John Doe's statements because, from Plaintiffs' perspective, Defendants knew John Doe was "unreliable in every way." Pls.' Resp./Cx-Memo. at 33. Plaintiffs rely on the undisputed fact that John Doe had never served as an informant before, and Defendants had no experience with him prior to his arrest on November 6, 2017. *Id.* at 34. Additionally, point out Plaintiffs, Officers Cappello and Sgt. Egan arrested John Doe following a high-speed car chase that resulted in a crash. *Id.* John Doe was arrested with 80 bags of heroin pre-packaged for sale and was a convicted felon with a "laundry list" of charges. *Id.* He gave the tip about Roberts while he was in lockup, and in exchange for the tip, Cappello orally told John Doe that he would "go to bat for him" with the State's Attorney to get lenient charges and/or sentencing. *Id.* Despite John Doe being a "completely untested informant of dubious reliability who had obvious motives to lie," Plaintiffs contend that Defendants did not corroborate his statements, and the only attempt to corroborate— the checks in LEADS and I-CLEAR—did not show that Roberts or Cavazos resided at the target residence. *Id.* at 34–35.

Predictably, Defendants take the position that the *Glover* factors are satisfied. Specifically, Defendants argue that the affidavit includes a detailed firsthand account of recent criminal activity that John Doe witnessed inside the target's residence: John Doe was inside the Roberts and Cavazos' residence three days before the search

14

warrant was executed,[9] at which time he observed a gym bag containing four large bags of suspect heroin and cocaine inside of the targets' bedroom. R. 490, Defs.' Reply/Cx-Resp. at 30. It also details that John Doe had known Roberts for ten years and Cavazos for two years, and that he had observed heroin and cocaine stored in the same manner on five other occasions he was inside of the residence. *Id.* John Doe also provided Officer Cappello information regarding Roberts' narcotics activities which he had knowledge of because he dealt drugs for Roberts for approximately a year before November of 2017. *Id.* Defendants point out that John Doe's information regarding Roberts was consistent with Cappello's prior knowledge that Roberts was a well-known drug dealer in the 11th District. *Id.*; *see also* Pls.' Sur-Resp./Cx-Reply at 43 n.36. Officers Cappello, Donnelly, and Sgt. Egan interviewed John Doe multiple times. Defs.' Reply/Cx-Resp. at 31. John Doe positively identified Roberts and

---

[9]In a footnote, Plaintiffs argue that John Doe's observation of drugs in the apartment was stale. Pls.' Resp./Cx-Memo. at 37 n.30. "Arguments in footnotes are typically waived." *Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016); *see also* J. Valderrama Standing Order, Memorandum of Law Requirements ("Generally, the Court will not consider substantive arguments contained in footnotes. This includes the distinguishing of cases relied upon by the opposing party."). The Court notes that both parties cite their own supporting caselaw and distinguish each other's cited cases in many footnotes. However, the parties' briefs were filed before the case was reassigned to this Court, so the Court will not enforce that rule and considers the cases cited in footnotes in each parties' briefs. However, in future motion practice (including motions *in limine*) the parties should keep the Court's Standing Order requirements in mind. As for Plaintiffs' argument about the stale information, the Court cannot say that is a "substantive argument," as it is more used as an example of why John Doe's information is unreliable. And no matter, because the Court agrees with Defendants that, under Seventh Circuit precedent, John Doe's firsthand observation of narcotics two days before he provided information to Defendants and three days before the search warrant was approved and executed is "certainly not stale." Defs.' Reply/Cx-Resp. at 30 n.5 (quoting *See United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011)); *see also United States v. Orr*, 969 F.3d 732, 737 (7th Cir. 2020) (controlled buy that occurred "within days" of the search supported probable cause); *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008) ("The information here was fresh (3 days old).").

Cavazos from photographs Officer Cappello obtained from the LEADS database, and identified the residence from a photograph and video from a real estate website. *Id.* Finally, during a drive by of the residence—which, as Plaintiffs point out, took place when it was dark outside and lasted about 3–4 minutes—John Doe identified the second-floor apartment of 3557 S. Damen as Roberts and Cavazos' residence. *Id.* (Pls.' Resp. DSOF ¶ 18).

Defendants emphasize the undisputed fact that Officer Cappello and Sgt. Egan brought John Doe before Judge Burns, at which time Judge Burns reviewed the warrant application, including John Doe's criminal history, and had an opportunity to cross-examine John Doe. Defs.' Reply/Cx-Resp. at 31. Judge Burns then approved the search warrant. *Id.* Altogether, posit Defendants, this information provided by John Doe, as well as their corroboration of the information and importantly, John Doe's appearance before Judge Burns, support probable cause.

As stated above, Plaintiffs take issue with the reliability of much of this information and methodology of obtaining it, including what was presented to Judge Burns. Plaintiffs first attack John Doe's reliability because he was an untested informant. This argument is a non-starter. Although Plaintiffs are correct that John Doe had not previously acted as an informant, as Defendants point out in reply, that fact is "far from disqualifying" because "every informant necessarily provides information for the first time." Defs.' Reply/Cx-Resp. at 32 (quoting *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002)); *Edwards*, 907 F.3d at 1057–58 ("[A]s we have emphasized before, '[a]t the beginning of his work with the police, every

16

informant necessarily provides information for the first time.'") (quoting *Guzman*, 565 F.3d at 396); *see also Weeks v. City of Chicago*, 2014 WL 3865852, at *4 (N.D. Ill. Aug. 6, 2014) ("[A]lthough Doe had never previously worked with the police, this is not fatal to a finding of probable cause.").

Plaintiffs acknowledge that being a first-time informant is not necessarily disqualifying, but only when other *Glover* factors compensate for it, which they maintain is not the case here. Pls.' Resp./Cx-Memo. at 39–40 ("The mere fact that an informant is untested weighs against a finding of probable cause, especially where there is little or no corroboration.") (citing *United States v. Bell*, 585 F.3d 1045, 1048 (7th Cir. 2009)). *Bell* is distinguishable, however, because among other things, the warrant application did not include any information about how the informant knew the target (he "could have been a rival drug dealer, an angry customer"), the informant did not appear before the judge, the affidavit had minimal detail, as it did not describe the quantity of drugs in the residence or how the informant was able to identify the narcotics, the information could have been stale since the court had no idea how long it had been since the informant had seen the gun. *Bell*, 585 F.3d at 1050. Here, in contrast, the affidavit detailed how long John Doe knew the targets, described how he knew that the substances he saw were narcotics, and indicated when he saw the narcotics in the target residence.

Plaintiffs also contend that the circumstances surrounding John Doe's tip undermine his reliability. This argument is also unavailing. The fact that John Doe was in police custody and facing charges does not "materially alter the probable cause

17

analysis." *Edwards*, 907 F.3d at 1058 (the fact that heroin user provided tip while high and in custody did not "materially alter the probable cause analysis" since the affidavit made it clear that the informant was a heroin user, the judge was provided with his criminal history, and "the police certainly are not playing in foul territory by choosing to talk to heroin users about where and from whom they buy heroin"); *see also United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) ("[A]n informant's criminality does not in itself establish unreliability."). And, as in *Edwards*, here, contrary to Plaintiffs' claims—and even when viewing the evidence in the light most favorable to Plaintiffs—the Defendants did not conceal or misrepresent the circumstances surrounding John Doe's arrest or his criminal history to Judge Burns.

In support of that contention, Plaintiffs point to evidence that, at the hearing before Judge Burns, neither Officer Cappello, Sgt. Egan, nor John Doe provided the judge with any information outside of what was included in the complaint. *See* Pls.' Resp./Cx-Memo. at 36 (citing PSOAF ¶¶ 21–23); R. 457-4, Cappello Dep. at 225:8–16 (everything that was in his complaint was presented to the judge and John Doe did not present any information to the judge that was not included in the complaint). However, as Defendants point out, the complaint affidavit references John Doe's criminal history,[10] and Officer Cappello testified that he gave the criminal history to Judge Burns, who reviewed it, and that Officer Cappello told Judge Burns about John Doe's arrest from the day before. Defs.' Reply/Cx-Resp. at 36 (citing DSOF ¶ 25; Defs.' Resp. PSOAF 22–23). Based on these facts, the Court cannot conclude that

---

[10]Plaintiffs also admit this in their reply to their Statement of Additional Facts. Pls.' Reply PSOAF ¶ 22.

Defendants intentionally or recklessly omitted any facts about John Doe's criminal history or arrest. *See United States v. White*, 2013 WL 3224456, at *4 (N.D. Ill. June 25, 2013), *aff'd,* 673 F. App'x 546 (7th Cir. 2016) ("[A]n inference of intention to mislead or even a reckless omission cannot be drawn from the omission in this instance because Officer O'Connor brought to Judge Chevere a file folder containing Doe's criminal history.").

On the other hand, it is undisputed that neither Defendants nor John Doe informed Judge Burns about Officer Cappello's oral promise of leniency in exchange for the tip. From Plaintiffs' perspective, this was another fact that Defendants intentionally or recklessly withheld from Judge Burns and on which probable cause depended. Pls.' Resp./Cx-Memo. at 36, 40. The Court agrees with Defendants that the omission of this fact was immaterial to the probable cause determination. Defs.' Reply/Cx-Resp. at 37. "Facts are material if their omission was 'necessary to the judicial officer['s] determination[ ] that probable cause existed.'" *Wade v. Ramos*, 2019 WL 1318368, at *7 (N.D. Ill. Mar. 22, 2019), *aff'd*, 26 F.4th 440 (7th Cir. 2022) (quoting *Suarez v. Town of Ogden Dunes,* 581 F.3d 591, 596 (7th Cir. 2009)). As the Seventh Circuit has stated, "an affidavit's omission of an informant's motive for providing information necessarily essential to a probable cause determination, especially when the informant is sufficiently reliable that probable cause would have been found even if the motive were included." *Taylor*, 471 F.3d at 840. Indeed, "courts are aware that informants are frequently facing charges and hoping for deals." *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003) (finding omission

19

of informant's desire to make a deal from warrant application because informant's testimony was sufficiently reliable that probable cause would have been found even if the informant's motive had been included); *see also United States v. Thompson*, 139 F. App'x 724, 732 (7th Cir. 2005) ("[T]he fact that [the informant] was facing charges and hoping for a deal would not surprise the judge or be likely to upset his probable cause finding since informants are often facing charges and hoping for deals.") (cleaned up).

The Court next tackles Plaintiffs' argument, raised for the first time in their cross-reply, that Defendants did not tell Judge Burns that John Doe was Roberts' cousin.[11] Pls.' Sur-Resp./Cx-Reply at 43 n.37. Usually, the Court will not consider an argument or case asserted for the first time on reply. *See Narducci v. Moore*, 572 F.3d 313, 323 (7th Cir. 2009). However, Defendants relied on John Doe's relationship with Roberts in support of his reliability in their reply/cross-response, so the Court will consider it. *See* Defs.' Reply/Cx-Resp. at 31, 34. Even so, Plaintiffs fail to support this argument regarding John Doe's motive with any authority and thus have waived it. *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (cleaned up). And, as stated

---

[11]Because neither party raises it, the Court does not consider the possibility that John Doe used the term "cousin" colloquially, rather than meaning that he was related to Roberts. That understanding would be supported by the fact that John Doe told Defendants that he had known Roberts for 10 years. That said, while evaluating Defendants' motion for summary judgment, the Court must construe all inferences in Plaintiffs' favor, and they argue that the fact that Roberts is John Doe's relative supports their argument about his lack of reliability, so the Court considers Roberts to be his actual cousin.

above, an informant's motive (here, through his relationship to Roberts) is not necessarily material where other details support probable cause. *See Taylor*, 471 F.3d at 840. And, even if John Doe's relationship to Roberts was material, the Court finds that qualified immunity would still apply, as discussed below. *See Archer v. Chisholm*, 870 F.3d 603, 615 (7th Cir. 2017) (cleaned up) ("[E]ven officers who knowingly or recklessly submit an affidavit containing falsehoods may receive qualified immunity if they show an objectively reasonable basis for believing that the affidavit still demonstrated probable cause.").

Plaintiffs make much of the undisputed fact that Officer Capello's only independent investigation of John Doe's information—his searches of the LEADS and I-CLEAR databases—did not corroborate John Doe's information that Roberts and Cavazos resided at 3557 S. Damen, and that Defendants did not inform Judge Burns of this fact. Pls.' Resp./Cx-Memo. at 35–36. Focusing only on the lack of corroboration evidenced by these databases (the Court addresses Officer Cappello's failure to conduct additional independent investigation below), the Court finds that the LEADS and I-CLEAR results are immaterial to the probable analysis, because, as discussed above, John Doe provided sufficiently detailed information to Defendants linking Roberts and Cavazos to 3557 S. Damen. *See Brock v. City of Chicago*, 2018 WL 3574752, at *3 (N.D. Ill. July 25, 2018) (finding that the officer "did not need to determine whether [the target], in fact, lived at [the target residence]—let alone that he was on the lease or when exactly he stopped living there—to have had probable cause to seek [the target's] arrest. . . . [T]here was more than enough evidence for [the

officer] to tie [the target] to the . . . address, and therefore to make it at least reasonable for [the officer] to think that [the target] was selling drugs at that address even if he did not live there."); *Horne v. Wheeler*, 2005 WL 2171151, at *5 (N.D. Ill. Sept. 6, 2005) ("It is not uncommon for criminals to conduct illegal activity at locations other than their primary residence. The confidential informant provided officers with sufficient information to establish both a reasonable probability that [the target] was engaged in illegal activity and that illegal activity was occurring within the [target residence]. Thus, the fact that [the target] did not reside at that address was immaterial to the probable cause inquiry."); *see also Tate v. City of Chicago*, 2024 WL 4333286, at *6 (N.D. Ill. Sept. 27, 2024) ("[I]t is not required that a target reside somewhere for that residence to be constitutionally searched.").

Plaintiffs point to their police expert John Ryan's testimony that databases listed different addresses "cut against John Doe's tip." Pls.' Sur-Resp./Cx-Reply at 46; Pls.' Resp./Cx-Memo. at 35. The Court accepts—as it must when evaluating Defendants' motion for summary judgment—Ryan's statement that the databases' failure to corroborate the address lessens the reliability of John Doe's information, but even so, Ryan's testimony does not make the results *material*, especially in the face of the above authority. (And, even if it was, the Court nonetheless would find that qualified immunity applies, as discussed below.) Therefore, because it is immaterial that the LEADS and I-CLEAR results did not show that Roberts or Cavazos resided at 3557 S. Damen, it matters not that Defendants did not include that information in the warrant application.

22

Finally, the Court addresses Plaintiffs' argument that Defendants failed to independently investigate or corroborate John Doe's statements, and this failure undermines any finding of probable cause. Plaintiffs emphasize that, apart from searching the LEADS and I-CLEAR databases (which did not connect Roberts or Cavazos to 3557 S. Damen), Defendants did not do any investigation independent from John Doe or his statements. Pls.' Resp./Cx-Reply at 33–35. Plaintiffs posit that there were numerous independent investigatory steps that Defendants should have taken, including, but not limited to, checking with or subpoenaing any utility company providing service to the address/apartment; checking with any cable TV service provider, cell phone carrier, or streaming internet service company; contacting the landlord/property manager or attempt to find them; or requesting access to Accurint for Law Enforcement or LexisNexis, even though CPD had access to the use of both databases. *See* Pls.' Sur-Resp./Cx-Reply at 46 & n.41. Defendants, on the other hand, point out why many of these additional investigative steps were not feasible or not commonly used in situations like this one. Defs.' Reply/Cx-Resp. at 35–36. They argue that the additional investigative steps proposed by Plaintiffs exceed what the law requires. *Id.* at 35–36, 38 (citing *United States v. Hawthorne*, 2014 WL 5461074, at *4 (N.D. Ill. Oct. 2, 2014), *report and recommendation adopted*, 2014 WL 5464347 (N.D. Ill. Oct. 20, 2014) ("[T]he question is not what more the police could have done but whether what they did was sufficient. It is easy to second guess the police, especially when the guesser is a highly skilled lawyer, well versed in the often inconsistent outcomes of Fourth Amendment cases.")).

Plaintiffs also point to the CPD Superintendent's statement that CPD was "too reliant on informants without third party or evidentiary corroboration." Pls.' Resp./Cx-Memo. at 33.[12] And Plaintiffs cite to COPA's findings that: (1) Cappello failed to adequately verify and corroborate information provided by John Doe; (2) Sgt. Egan failed to ensure that Cappello completed a thorough search warrant investigation; and (3) Lt. Dari failed to ensure that Cappello verified and corroborated John Doe's information by an independent investigation prior to approving the search warrant. Pls.' Sur-Resp./Cx-Reply at 38–39 (citing Pls.' Suppl. SOAF ¶ 141; R. 519, COPA Report).

Defendants object to the admissibility of the COPA report, arguing that whether Defendants violated CPD general orders, rules, regulations, or directives is irrelevant to Plaintiffs' § 1983 claims against them. Defs.' Resp. Suppl. PSOAF ¶ 141 (citing Fed. R. Evid. 401, 402). Additionally, Defendants argue that the report is inadmissible because any relevance it has is outweighed by its prejudicial value under Rule 403. *Id.* And finally, citing *Thompson v. City of Chicago*, Defendants contend that, "the violation of police regulations or even a state law is completely immaterial to the question of whether a violation of the federal constitution has been

---

[12]Defendants object to Superintendent Brown's statement as hearsay, as Plaintiffs supported it by citing to a transcript of a CBS news video. Defs.' Resp. PSOAF ¶ 1 (citing *Perkins v. Milwaukee County,* 781 Fed. Appx. 538, 542–43 (7th Cir. 2019) ("Media reports offered for the truth of the matter asserted. . . are inadmissible hearsay.")). Plaintiffs correctly point out, however, that "[t]o be considered on summary judgment, the evidence must be admissible at trial, though the form produced at summary judgment need not be admissible." Pls.' Reply PSOAF ¶ 1 (quoting *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)). Defendants admit that Superintendent Brown made the quoted statement, and Plaintiffs indicate that they could call him at trial, at which time his statements would be admissible as statement of a party-opponent under Federal Rule of Evidence 801(d)(2)(A) and 801(d)(2)(D). *Id.*

established." *Id.* (quoting 472 F.3d 444, 454–55 (7th Cir. 2006)); *see also* Defs.' Reply/Cx-Resp. at 36.

A court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Therefore, evidence must be relevant under Rule 401. *See, e.g.*, *Reed v. City of Chicago*, 2006 WL 1543928, at *4 (N.D. Ill. June 1, 2006). And, "while it is not unheard of to exclude evidence under Rule 403 at the summary judgment stage, normally the balancing process contemplated by that rule is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (cleaned up).

In *Thompson*, a case involving a Section 1983 excessive force claim, the district court granted the defendant's motion *in limine* seeking to exclude "any reference in testimony, evidence or argument to the CPD's General Orders, policies and procedures." *Id.* at 449–50. The Seventh Circuit affirmed, explaining that while evidence, testimony or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion or salary decisions" made by the defendant's superiors, that kind of information is "immaterial" to the jury's determination of whether the use of force at issue in the particular case was objectively reasonable under the circumstances (the federal constitutional standard), and was therefore "properly excluded" in rulings on motions *in limine*. *Id.* at 455; *see also Lyles v. Gambino*, 2019 WL 5654227, at *2 (N.D. Ill. Oct. 31, 2019) ("It appears to be beyond debate in this Circuit that the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the

25

federal constitution has been established in § 1983 claims.") (cleaned up) (collecting cases).

Plaintiffs correctly point out, however, that the Seventh Circuit has since clarified that "*Thompson* should not be understood as establishing a rule that evidence of police policy or procedure will never be relevant to the objective-reasonableness inquiry." Pls.' Reply Pls.' Suppl. PSOAF ¶ 141 n.9 (quoting *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017)). But the passage cited by Plaintiffs pertains to the use of expert testimony concerning police policy, which the Seventh Circuit has stated is not "categorically barred." *Id.* As the Seventh Circuit explained, "[e]xpert testimony of this type may be relevant in cases where specialized knowledge of law-enforcement custom or training would assist the jury in understanding the facts or resolving the contested issue." *Id.* The evidence at issue here is not expert testimony regarding Defendants' departures from CPD policies on the procurement of search warrants, but rather COPA and CPD's findings on the same. Pls.' Reply Pls.' Suppl. PSOAF ¶ 141.

The Court must determine whether such evidence is admissible. Plaintiffs rely on *Godinez v. City of Chicago*, 2019 WL 5592721, at *7 (N.D. Ill. Oct. 30, 2019)[13] in support of their contention that COPA's findings are relevant and admissible. In *Godinez*, the parties filed cross-motions for summary judgment on the plaintiff's

---

[13]Usually, argument presented in statements of fact or responses thereto is impermissible. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). However, because Plaintiffs cite *Godinez* only as it pertains to Defendants' objection to relevancy raised in Defendants' response to Plaintiffs' supplemental statement of fact (both of which were filed after briefing concluded), the Court considers the authority cited by the parties in the statement of fact and response/reply thereto. *C.f.* N.D. Ill. Local R. 56.1(e)(2).

excessive force and failure to intervene claims. *Id.* at *1. IPRA/COPA and the CPD Superintendent found that the defendant officers used excessive force, and that another officer failed to intervene. *Id.* at *7. The court, relying on *Brown*, 871 F.3d at 537, disagreed with the defendants that those findings were immaterial. *Godinez*, 2019 WL 5592721, at *7. However, it found that the IPRA/COPA and CPD findings did not conclusively establish a constitutional violation, and therefore denied the plaintiffs' summary judgment motion. *Id.* (citing *Brown*, 871 F.3d at 536–37 ("The excessive-force inquiry is governed by constitutional principles, not police-department regulations. An officer's compliance with or deviation from departmental policy doesn't determine whether he used excessive force."); *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (expert testimony about violations of standard police practices are not dispositive but may be relevant to the reasonableness inquiry)). The *Godinez* court also found that the IPRA/COPA finding was evidence precluding the defendants' cross-motion for summary judgment on excessive force and failure to intervene. *Id.* The court also found that there were numerous other disputed facts about excessive force that were appropriate for a jury. *Id.*

At least at this stage, based on the materials before the Court, it finds, as did the *Godinez* court, that COPA Report and Superintendent's findings are relevant. That is not the end of the analysis, however. The court in *Godinez* did not address the question of whether the IPRA/COPA and CPD findings would mislead the jury under Rule 403; rather it analyzed only whether the findings were relevant to the excessive

force inquiry. *See* 2019 WL 5592721, at *7. True, as stated above, often the Rule 403 balancing process is better left for trial, *Adams*, 231 F.3d at 428; however, the Court finds it to be clear-cut that COPA's findings on the allegations (that is, the findings of sustained, not sustained, unfounded, or exonerated) are more prejudicial than probative. That is, the Court agrees with Defendants that admitting COPA's findings that Defendants violated CPD policy and rules, which are an amalgamation of departmental-specific rules, state law, and federal law, would confuse and mislead the jury. *See* Defs.' Resp. Pls.' Suppl. PSOAF ¶ 141. Indeed, one of the cases cited by Plaintiffs in support of the admission of these findings implies (admittedly in *dicta*) the same. Pls.' Reply Pls.' Suppl. PSOAF ¶ 141 (citing *Sanchez v. City of Chicago*, 700 F.3d 919, 930 (7th Cir. 2012)). There the Seventh Circuit found that the district court did not abuse its discretion in allowing limited testimony from an IPRA investigation, stating, "[i]t is important to emphasize first that [the investigator] said nothing about the IPRA's conclusion as to the . . . incident; his testimony was confined to the collateral allegation [about the defendant officers alleged threat of retaliation], [s]o the testimony did not invade the jury's province to decide what occurred." *Sanchez*, 700 F.3d at 930. Here, the Court finds that IPRA's finding, sustaining the allegations that several Defendants failed to adequately verify and corroborate John Doe's information before acquiring or executing the search warrant runs the risk of "invad[ing] the jury's province," or at the very least, confusing them. COPA Report at 2, 5; *Sanchez*, 700 F.3d at 930.

Without more from the parties on the issue, however, the Court declines to categorically bar under Rule 403 COPA's more specific evidentiary findings relied on by Plaintiffs, such as its findings that Capello did not take six corroborative steps available to him, and that, instead of asking for assistance when LEADS and I-CLEAR did not confirm the targets' addresses, he relied on John Doe "to validate his own narrative." Pls.' Sur-Resp./Cx-Reply (quoting COPA Report at 21–22). The Court finds such findings to be more in line with admissible expert testimony. *See, e.g.*, *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (expert testimony was properly admitted where he "testified only about reasonable investigative procedures and ways in which evidence from other witnesses did or did not indicate departures from those reasonable procedures."). Of course, it goes without saying that COPA is not the same as an expert witness, so the Court stresses that it is considering this evidence at this stage only, and will consider further arguments, if necessary, in motions *in limine* as to the admissibility about COPA's evidentiary findings.

Even considering these evidentiary findings, the Court finds that *Edwards*, cited by Defendants in their opening memorandum and in their response to Plaintiffs' Supplemental Statement of Fact, is dispositive. The Court agrees with Defendants that the facts in *Edwards* are substantially similar to the facts of this case. In *Edwards*, the john doe gave specific information, based on his own firsthand observations, regarding his recent heroin purchase from the target, such as the quantity of drugs purchased, the quantity the target possessed, the target's offer to sell him more in the future, and the fact that he knew it was heroin because he had

ingested it. *Id.* at 1057. Similar to what Defendants characterize as their corroboration here, in *Edwards*, the officer corroborated the john doe's information by having him identify a photo of the house, driving him past the location, and having him identify a photo of the target. *Id.* One day passed between the john doe's heroin purchase and when the warrant was submitted and the john doe appeared before the judge. *Id.* The Seventh Circuit acknowledged that the officers "largely took Doe at his word without independently corroborating much of his account. While the officers took steps to have Doe confirm the identity of the house and [the target], they did not seek corroboration outside of Doe himself. . . . Put differently, the steps the police took gave them some additional information, but did not directly bolster Doe's account that [the target] was dealing heroin at the [target residence]." *Id.* at 1058 (cleaned up). Nevertheless, the court found that it must "view the corroborative efforts the police took against the multiple other factors strongly supporting a finding of probable cause. And here those facts added up to probable cause." *Id.*

Plaintiffs attempt to distinguish *Edwards* in their response/cross-memorandum, by pointing out that in *Edwards*, the informant's information was from the same day, he gave information against his penal interest, and the affiant-officer had not withheld any credibility-damning statements from the judge. Pls.' Resp./Cx-Memo. at 39–40 (citing 907 F.3d at 1055–56, 1057). As to the time between the information and the issuance/execution of the warrant, as the Court noted above, the Seventh Circuit has held that 3-day-old information is not "stale." *See Searcy*, 664 F.3d at 1122. Similarly, the Court already found that Defendants did not withhold

any material facts from Judge Burns. Finally, Plaintiffs do not explain why the information provided by the john doe in *Edwards*—that is, that he had purchased heroin from the target on other occasions and injected himself with purchased heroin after buying it from the target, 907 F.3d at 1057—is any more against his penal interest than the statements John Doe made to Defendants here. That is, it is undisputed evidence here is that John Doe informed Defendants that he had been dealing drugs for Roberts for over a year, DSOF ¶ 6, which is arguably more incriminating that simply buying heroin for personal use. And, for the reasons discussed above, the Court finds that Defendants did not withhold any material information about John Doe's reliability from Judge Burns.

True, there was no evidence in *Edwards* regarding COPA's evidentiary findings about any deficiencies in the defendant officer's investigation. The Court finds that not to be determinative, however. As stated above, the Court considers COPA's findings that, among other things, instead of asking for assistance when LEADS and I-CLEAR did not confirm the targets' addresses, Capello relied on John Doe "to validate his own narrative." Pls.' Sur-Resp./Cx-Reply (quoting COPA Report at 21–22). Certainly, COPA's evidentiary findings are evidence of a deficiency in *Glover*'s "degree of corroboration" factor. But, as described above, no one factor is determinative, so "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Peck*, 317 at 756. Here, as discussed above, the facts of this case, including the steps Defendants took to corroborate John Doe's information, are nearly on all fours with the facts in *Edwards*,

31

where the Seventh Circuit found that the facts added up to probable cause. 907 F.3d at 1058. The Court finds *Edwards*, which is binding on this Court, to support a finding of probable cause here too.

Therefore, the Court finds that Defendants are entitled to summary judgment on Count II as it pertains to procurement of the search warrant. Even if there was some deficiency in the complaint for the warrant or the warrant itself, however, the Court finds that Defendants would still not be liable because they are entitled to qualified immunity.

## II.     Qualified Immunity

In assessing qualified immunity, a court "must ask two questions: '(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation.'" *Edwards*, 907 F.3d at 1060 (quoting *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012)). The Court must "conduct this inquiry against the backdrop of the Supreme Court's repeated (and recent) reminders not to define clearly established law at a high level of generality." *Id.* (cleaned up).

"Describing relevant precedent abstractly evades the crucial question at the core of any qualified immunity analysis: whether the official acted reasonably *in the particular circumstances* that he or she faced." *Sabo v. Erickson*, 2025 WL 354484, at *4 (7th Cir. Jan. 31, 2025) (cleaned up). A rule of law is too generally defined "if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id.* (cleaned up). True, "existing precedent

32

need not be directly on point to clearly establish an alleged right." *Id.* (cleaned up). Indeed, "[i]n truly egregious cases, a more general rule may apply with obvious clarity to the specific conduct in question." *Id.* (cleaned up). Where, however, "the reasonableness of an officer's actions depends on the circumstances, . . . plaintiffs must define clearly established law with much more specificity." *Id.*

At bottom, qualified immunity "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Edwards*, 907 F.3d at 1060 (quoting *Kisela v. Hughes*, 584 U.S. 100, 103 (2018)).

When defendants invoke the qualified immunity defense in a case involving an invalid search warrant claim, plaintiffs must do more than demonstrate that the warrant lacked probable cause. Officers who execute an invalid warrant are "still entitled to qualified immunity if [they are] acting pursuant to a warrant that was authorized by a judge and [their] action is reasonable." *Archer*, 870 F.3d at 614. To overcome Defendants' qualified immunity defense, Plaintiffs must demonstrate that either "(1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (cleaned up). The standard is adopted from, and similar to, the standard for the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984).

It does not appear that Plaintiffs rely on the first prong, and indeed they appear to concede that fact in their sur-response/cross-reply. Pls.' Sur-Resp./Cx-Reply ("[W]here a general constitutional rule applies with obvious clarity plaintiffs are not required to cite prior decisions with identical factual circumstances."). To the extent Plaintiffs argue that they have presented a case with indistinguishable facts, the Court disagrees, as discussed below. Their primary argument against qualified immunity falls into the second category—"that the criminal complaint was 'so lacking in indicia of probable cause as to render . . . belief in its existence unreasonable.'" *Wade*, 2019 WL 1318368, at *10 (quoting *Archer*, 870 F.3d at 603).

Starting with the first prong, the Court agrees with Defendants that the cases cited by Plaintiffs are distinguishable, such that Defendants meet the standard for qualified immunity on the first prong. Plaintiffs cite to fifteen cases in two footnotes in support of the proposition that, on summary judgment affiants are denied qualified immunity (or the good faith exception in criminal cases) when they fail to corroborate information from an informant of unknown reliability and rely solely on the informant's uncorroborated tip. Pls.' Resp./Cx-Memo. at 41 nn.37–38. The first case cited was decided at the motion to dismiss stage, so the Court finds it inapposite. *Phillips v. City of Chicago*, 2021 WL 1614503, at *2 (N.D. Ill. Apr. 26, 2021). None of the cases decided at summary judgment are directly on-point, either.[14]

---

[14]*See Stamps v. Hernandez*, 2010 WL 3713686, at *4 (N.D. Ill. Sept. 14, 2010) (granting summary judgment for plaintiffs against defendants on their unreasonable search and seizure claim based on validity of the warrant where confidential informant had informed officer about which of two apartment doors on 3rd floor led to the target, but officer included only "3rd floor apartment." The holding did not hinge on the information from or reliability of the confidential informant but rather what the officers did (or did not do) with that

The Court turns to Plaintiffs' argument that no reasonable officer would have applied for a warrant based on the information possessed and steps taken by Defendants. Pls.' Resp./Cx-Memo. at 40–42. Plaintiffs note that the duty to independently corroborate a John Doe's statement was clearly established in 2012–2015 in CPD's search warrant policy and training. *Id.* at 41–42 (citing PSOAF ¶¶ 62–63). Defendants do not address this argument in their reply/cross-response and therefore have waived the argument. *See In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). No matter, however, because, "[a]lthough qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer*, 870 F.3d at 613. Even in the face of CPD policy, the Court cannot say that the criminal complaint was "so lacking in indicia of probable cause as to render . . . belief in its existence unreasonable."

---

information.); *McCadd v. Murphy*, 763 F. Supp. 2d 1018 (N.D. Ill. 2010) (officers not entitled to summary judgment on invalid search warrant claim where the john doe told officers he had bought crack from a man with the same name as plaintiff, where only corroboration police did was to look up plaintiff's criminal history which showed a cocaine possession charge, show a photograph of the residence to the john doe, and show 5-year-old photo of plaintiff to the john doe; the court did not discuss whether the john doe appeared in front of the judge who issued the warrant, and the police did not drive the john doe by the residence); *Draine v. Bauman*, 708 F. Supp. 2d 693, 708 (N.D. Ill. 2010) (no probable cause and officers not entitled to qualified immunity where informant's identity was unknown ("he was a real John Doe"), he could not identify target from a photo, did not describe the inside of the house or the amount of drugs he saw or purchased, and did not know the exact location or address of the building where the drug transactions occurred, instead giving a vague location of the building, and the affiant officer did not know anyone by the target's name selling drugs in the area); *United States v. McNeal*, 82 F. Supp. 2d 945, 956, 961 (S.D. Ind. 2000) (good faith exception did not apply where affidavit summarily stated the target residence was under the target's control, but that statement was neither supported by observations of the confidential informant or officer, nor by any other method of investigation). The Court does not discuss each out-of-Circuit case cited by Plaintiffs, but finds that none of them constitutes a closely analogous case.

Again, *Edwards* is instructive. The Seventh Circuit noted that, "[t]ime and again we have upheld warrants based on an informant's recent and firsthand account of criminal activity." 907 F.3d at 1060. It rejected the plaintiff's challenge to the qualified immunity defense, stating:

> Nor does the officers' minimal corroboration show a reckless disregard for the truth sufficient to overcome qualified immunity, especially in light of the other factors indicating the reliability of Doe's information. At the time they applied for the warrant, Doe had identified the residence on South Keeler as the drug house, from a picture and in person. The officers had no reason to doubt the accuracy of this information and instead, may have reasonably assumed that someone with a drug habit would be able to identify the house where he had recently purchased drugs. The affidavit outlined the steps that Jolliff-Blake took to corroborate Doe's account. Armed with this information, the state judge could have told the police that they needed to do more investigation; by issuing the warrant instead, the judge entitled the police to search without the risk of personal liability.

*Id.* at 1062 (cleaned up). As discussed above, the facts the Seventh Circuit found to support the john doe's reliability are substantially similar to the facts in this case: when Defendants applied for the warrant, John Doe had identified 3557 S. Damen as the target residence, from a picture and in person during a drive-by. He also gave detailed instructions about how to access the apartment unit. DSOF ¶ 10. Additionally, the corroboration conducted by officers in *Edwards* was substantially similar to the corroboration conducted by Defendants here—they "did not seek corroboration outside of Doe himself." 907 F.3d at 1058. And, as in *Edwards*, John Doe appeared before, and was questioned by, a judge.

Plaintiffs also contend that Defendants procured the warrant in reckless disregard for the truth because they concealed material facts that undercut Judge Burns' probable cause analysis. Pls.' Resp./Cx-Memo. at 42. For the reasons described

36

above, the Court finds that none of the facts that Defendants omitted from the warrant application were material such that they invalidated the warrant.

The Court must note that, as COPA found and the Superintendent stated, clearly there was more Defendants could have and should have done to verify the correct address and apartment. However, for the reasons discussed above, officers are not legally liable for every lacking investigation, especially in the face qualified immunity. Like in *Edwards*, the Court finds that Defendants are entitled to qualified immunity based on their reasonable belief that the affidavit established probable cause even though it left "much to be desired." 907 F.3d at 1062 (quoting *Junkert*, 610 F.3d at 370).

## III.   Supervisory Liability

Plaintiffs argue that the undisputed evidence shows that Sgt. Egan and Lt. Dari[15] failed to properly supervise Officer Cappello's search warrant investigation that resulted in the illegal search of Plaintiffs' apartment. Pls.' Resp./Cx-Memo. at 43; Pls.' Sur-Resp./Cx-Reply at 48–49, 53–56. Pursuant to § 1983, a supervisor "may be personally liable for the acts of his subordinates if he approves of the conduct and the basis for it." *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869–70 (7th Cir. 2011) (cleaned up). To be found liable under supervisory liability, supervisors must act

---

[15]As stated above, Lt. Dari was not named in Count III in Plaintiffs' Fourth Amended Complaint. The Seventh Circuit recently held that "district courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). Because of the Court's finding on probable cause, the analysis on supervisory liability is limited, and the Court therefore finds that it is most efficient, and does not prejudice either party, to construe the Fourth Amended Complaint as alleging Count III for supervisory liability against Lt. Dari in addition to Sgt. Egan.

either knowingly or with deliberate, reckless indifference in that they "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* Supervisors who are merely negligent, or even grossly negligent, are not liable under § 1983. *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988). "There can be no supervisory . . . liability without an underlying deprivation of constitutional rights." *Smith v. Vill. of Norridge*, 2009 WL 210458, at *11 (N.D. Ill. Jan. 22, 2009) (citing *Houskins v. Sheehan*, 549 F.3d 480, 493–94 (7th Cir. 2008)).

Because the Court finds that the search warrant was not invalid for probable cause, it agrees with Defendants that Sgt. Egan and Lt. Dari cannot be held liable under a supervisory liability theory for the procurement of the search warrant. Defs. Memo. at 17 (citing *Smith*, 2009 WL 210458, at *11).

And, for the same reasons discussed above, the Court finds that Sgt. Egan and Lt. Dari are also entitled to qualified immunity on the supervisory liability claim, as no "reasonably well-trained officer would have known that the search was illegal despite the judge's authorization." *Draine v. Bauman*, 708 F. Supp. 2d 693, 708 (N.D. Ill. 2010). Under that lens and for the reasons articulated above, the Court cannot find that Sgt. Egan or Lt. Dari acted knowingly or with a deliberate, reckless indifference during the procurement of the search warrant in that they conducted, facilitated, approved, condoned, or turned a blind eye to any misconduct. *See Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869–70 (7th Cir. 2011).

38

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Counts II and III as they relate to the validity of the warrant. The Court denies Plaintiffs' cross-motion on the same. The Court will issue a subsequent Order addressing the parties' cross-motions for summary judgment on the other claims (including Count II's Fourth Amendment illegal search claim based on Defendants' failure to knock and announce).

Dated: February 7, 2025

United States District Judge
Franklin U. Valderrama